United States Court of Appeals
Fifth Circuit

**F I L E D**

**July 20, 2005**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

---

No. 04-70023

---

CARL L. BROOKS,

Petitioner-Appellant,

versus

DOUG DRETKE, Director, Texas Department of Criminal Justice,
Correctional Institutions Division,

Respondent-Appellee.

---

Appeal from the United States District Court
For the Western District of Texas, San Antonio

---

Before HIGGINBOTHAM, DAVIS, and PRADO, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

On the first day of the sentencing phase of his capital trial, a member of the jury that had convicted Carl L. Brooks was arrested for the misdemeanor offense of unlawfully carrying a weapon and faced prosecution by the district attorney's office then prosecuting Brooks. A loaded pistol was found in his briefcase in the routine screening of a security checkpoint in the courthouse. Whether this jury misconduct tainted the jury's sentencing decision of death is the only issue remaining in this case today. We are

persuaded that while the conviction of capital murder must stand the sentence of death must be vacated.

I

Carl L. Brooks was convicted by a Texas jury of the capital murder of Frank Johnson in the course of a robbery and sentenced to death. The Texas Court of Criminal Appeals affirmed[1] and the Supreme Court denied certiorari.[2] Brooks filed a writ of habeas corpus in state court. Judge Pat Priest, sitting by assignment in the 175th District Court in Bexar County, Texas, presided at the trial and conducted evidentiary hearings on Brooks's petition for post-conviction relief under Article 11.071 of the Texas Code of Criminal Procedure:

> On the evening of April 21, 1997, applicant was convicted by the jury of the offense of Capital Murder as charged in the indictment. After reaching a verdict on the issue of guilt, the jury retired for the evening. At the onset of the punishment phase, counsel for applicant moved for a mistrial on the grounds that one of the jurors (juror Garcia) had been arrested that morning for entering the courthouse with a handgun. This court found that the juror had been "booked and released on P.R. bond" and as a result was "available for jury service". That motion for mistrial was denied. The applicant then requested that this Court remove the juror on the grounds that he was disabled. That request was also denied. At the request of the applicant, this Court made an inquiry of the juror. During questioning by the court, it was established that the juror had not informed other members of the jury of his arrest. The juror also informed the court that his arrest would in no way impede his ability to be fair to the applicant during the remainder of the trial. No further relief was requested by the applicant.

---

[1] *Brooks v. State*, 990 S.W.2d 278 (Tex. Crim. App. 1999).

[2] *Brooks v. Texas*, 528 U.S. 956 (1999).

2

The trial continued with Juror Garcia.

. . .

This claim for relief was a subject of the evidentiary hearing conducted at the applicant's request. The juror in question testified at the evidentiary hearing, along with the members of the District Attorney's Office involved in the subsequent prosecution of juror Garcia.

Garcia was arrested while passing through the security checkpoint on the first floor of the Bexar County Criminal Justice Center on April 22, 1997. The arrest was based upon the fact that Garcia carried a .25 caliber pistol in his briefcase upon entering the Justice Center. At the time of his arrest, Garcia explained to the arresting officer that he was carrying the pistol because he was planning to take it to the gunsmith for repairs.

Garcia related that he was not carrying the pistol because he feared for his personal safety at the time of the trial. Moreover, his arrest did not influence him in his deliberations regarding applicant's punishment. Garcia's fellow jurors were unaware of his arrest throughout the remainder of the proceedings. The event was not a subject of discussion during jury deliberations. At no point did Garcia have any off-the-record conversations with members of the District Attorney's Office regarding the disposition of his case. Garcia did not vote at the punishment phase in a fashion designed to ingratiate himself with the District Attorney's Office in hopes of obtaining some species of leniency in the future.

Garcia related that his vote to assess the death penalty upon the applicant, was based solely upon the evidence presented during the course of the trial and was wholly unrelated to the charge pending against him. Garcia had no contact with any members of law enforcement regarding his charge, with the exception of the arresting officer.[3]

---

[3] *Ex Parte Brooks*, No. 96CR0292-W1, at 3-5 (175th Dist. Ct., Bexar County, Tex. May 5, 2000) (unpublished) (findings of fact and conclusions of law) (citations omitted).

The Texas Court of Criminal Appeals adopted the findings of fact and conclusions of law of the state trial court and denied Brooks's state application for a writ of habeas corpus.[4] Brooks then filed his application for a federal writ under 28 U.S.C. § 2254 on April 4, 2003. The federal district court judge denied all relief on June 2, 2004,[5] and denied a certificate of appealability two weeks later. We then granted a certificate of appealability,[6] only upon the claim that the verdict of the jury in the sentencing phase of the trial was tainted by the arrest of the juror.[7]

## II

Brooks urges that the trial judge should have granted his motion for mistrial, which he filed upon learning of Garcia's arrest and arraignment. The contention is that the same district attorney's office prosecuting Brooks for capital murder was prosecuting a member of the jury deciding his fate. This circumstance, however innocent on the part of the juror and however pure the motive of the prosecution in the filing of the initial charge, created an intolerable inherent risk of abuse. The

---

[4] *Ex Parte Brooks*, No. 45,631-01 (Tex. Crim. App. Sept. 13, 2000) (unpublished).

[5] *Brooks v. Dretke*, No. SA-00-CA-1050-FB (W.D. Tex. Jun. 2, 2004) (unpublished).

[6] *See Brooks v. Dretke*, 404 F.3d 924 (5th Cir. 2005).

[7] This claim was briefed as three issues. *See id.* at 925-26 (issues 2-4).

4

argument is that throughout the sentencing phase of the trial and deliberations over the sentence, Garcia faced the reality that his own fate would be decided by a prosecutor exercising virtually unreviewable discretion over his offense--an offense that could have been charged up to a third degree felony.

The State argues that the state proceedings have demonstrated that there was no actual bias; that Brooks must rely on what, in the State's view, is an unsettled doctrine: implied bias. It next replies that the arresting officer charged Brooks unlawfully carrying a weapon, a misdemeanor,[8] not the felony offense of going with a firearm into a courthouse;[9] that Garcia was in fact never charged with a felony and pled to the possession charge. Moreover, the State urges that it could not have sustained a felony prosecution on these facts in that the statute at the time required entry into a courtroom, although it was later amended to reach entry onto the premises of a courthouse.[10]

---

[8] *See* TEX. PENAL CODE ANN. § 46.02(a) (Vernon 1994) ("A person commits an offense if he intentionally, knowingly, or recklessly carries on or about his person a handgun . . . ."); TEX. PENAL CODE ANN. § 46.02(e) (Vernon 1994) (offense is class A misdemeanor).

[9] *See* TEX. PENAL CODE ANN. § 46.03(a)(3) (Vernon Supp. 1996) ("A person commits an offense if, with a firearm, . . . he intentionally, knowingly, or recklessly possesses or goes . . . in any government court or offices utilized by the court, unless pursuant to written regulations or written authorization of the court."); TEX. PENAL CODE ANN. § 46.03(g) (Vernon Supp. 1996) (offense is third degree felony).

[10] In 2003, § 46.03(a)(3) was amended to make it an offense to intentionally, knowingly or recklessly possess a firearm "on the premises" of-- rather than just "in"--any government court or offices utilized by the court. *See* Act of June 20, 2003, 78th Leg., R.S., ch. 1178, § 3, 2003 Tex. Sess. Law Serv. 3364 (Vernon).

A

This is not a case of jury tampering or outside information finding its way to a juror. Nor is it a case of misconduct by a juror while performing his duties, although he was headed into the courthouse to resume work as a juror. Rather, this case involves a juror, Garcia, who found himself in a position of potential conflict between his duty and his self-interest. Further, this is not a case where the trial judge failed to respond properly. To the contrary, on learning of Garcia's arrest, the trial judge questioned Garcia out of the presence of the other jurors and in the presence of all counsel, insuring that others had not and would not learn of what had happened. He also accepted the assurances of Garcia that this would have no effect on his deliberations. In short, there can be no claim of deficiency in the procedural response to the arrest of the juror. The trial judge did all that he could do, short of seating a new jury.[11]

We cannot know whether Garcia's assurances of fairness were realized even if we accept as we do the trial court's finding of his credibility. In general, we have responded to this reality in two ways. In one small set of circumstances, we have been unwilling to accept a juror's claims of fairness; rather, we have

_____

[11] We do not speculate on other choices that the state trial judge may have had such as seating an alternate. The record sheds no light on this question. We assume that the choices were to do as he did or to empanel a new jury for the sentencing phase of the trial.

6

implied bias and ordered new trials.[12]  While we recently summarized the law in this circuit and need not march that ground again,[13] it bears emphasis that while we are persuaded that the principle of implied bias is settled federal law, its application has been confined to a narrow range of cases.  As Justice O'Connor once opined:

> While each case must turn on its own facts, *there are some extreme situations that would justify a finding of implied bias*.  Some examples might include a revelation that the juror is an actual employee of the prosecuting agency, that the juror is a close relative of one of the participants in the trial or the criminal transaction, or that the juror was a witness or somehow involved in the criminal transaction.[14]

In a second set of cases, we have refused to imply bias and held that post-verdict hearings to determine bias is an adequate response, guided in our path by Supreme Court precedent.[15]  In *Remmer v. United States*,[16] the Court found presumptive prejudice in an unsuccessful effort to bribe a juror; but rather than order a new trial, instructed the trial judge to conduct a hearing into the

---

[12] *See, e.g.*, *United States v. Scott*, 854 F.2d 697, 700 (5th Cir. 1988); *see also Smith v. Phillips*, 455 U.S. 209, 222-23 (1982) (O'Connor, J., concurring); *cf. Leonard v. United States*, 378 U.S. 544 (1964).

[13] *Solis v. Cockrell*, 342 F.3rd 392 (5th Cir. 2003).

[14] *Phillips*, 455 U.S. at 222 (O'Connor, J., concurring) (emphasis added), *quoted in Scott*, 854 F.2d at 699.

[15] *See, e.g.*, *Solis v. Cockrell*, 342 F.3d 392, 399-400 (5th Cir. 2003); *United States v. Sylvester*, 143 F.3d 923 (5th Cir. 1998); *see also Smith v. Phillips*, 455 U.S. 216 (1982); *Remmer v. United States*, 347 U.S. 227 (1954).

[16] 347 U.S. 227 (1954).

circumstances to determine prejudice.[17]  Then, in *Smith v. Phillips*,[18] the Court declined to imply bias where a juror in a murder trial applied for a job in the district attorney's office, a fact not disclosed until after the conviction.  Reviewing caselaw, the Court summed up: "These cases demonstrate that due process does not require a new trial every time a juror has been placed in a potentially compromising situation."[19]  The Court continued:

> Due process means a jury capable and willing to decide the case solely on the evidence before it, and a trial judge ever watchful to prevent prejudicial occurrences and to determine the effect of such occurrences when they happen. Such determinations may properly be made at a hearing like that ordered in *Remmer* and held in this case.[20]

Justice O'Connor concurred, making clear that in certain narrow circumstances where implied bias is found, "a hearing may be inadequate for uncovering a juror's biases."[21]  We, in turn, made clear in *United States v. Scott* that the law in this Circuit tracks Justice O'Connor's view.[22]

Lower courts have divided over whether *Remmer*'s presumption of

---

[17] *Id.* at 230.

[18] 455 U.S. 216 (1982).

[19] *Id.* at 217.

[20] *Id.*

[21] *Phillips*, 455 U.S at 222 (O'Connor, J., concurring).

[22] 854 F.2d at 699.

prejudice survived *Phillips* as well as the later decision of the Court in *United States v. Olano*.[23] While a panel of this court concluded in *United States v. Sylvester*[24] that *Remmer* and *Phillips* had ended the "presumption of prejudice," it did not address implied bias, seeing the issue in *Sylvester* to be where the burden of proof properly lay. It held that the government had no burden to prove the absence of prejudice until the court on inquiry determines that prejudice is likely. The determination of implied bias is an objective legal judgment made as a matter of law and is not controlled by sincere and credible assurances by the juror that he can be fair.[25] By definition then, rules for hearings into actual bias such as shifting burdens of proof are not in play in the narrow range of cases in which it is implied.

B

Our question is whether Garcia's conduct is of the genre of cases Justice O'Connor pointed to in her concurring opinion in *Phillips*: juror conduct not salvageable by post event hearings. We think that the answer to this question is yes. Garcia was married with two young children. As he listened to the evidence in the sentencing phase and participated in the jury's decision of the

---

[23] 507 U.S. 725 (1993); *see Parker v. Head*, 244 F.3d 831, 839 n.6 (11th Cir. 2001) (collecting cases).

[24] 143 F.3d 923 (5th Cir. 1998).

[25] *See United States v. Wood*, 299 U.S. 123, 133 (1936) ("The bias of a prospective juror may be actual or implied; that is, it may be bias in fact or bias conclusively presumed as matter of law."), *quoted in Solis*, 342 F.3d at 395.

9

State's contention that Brooks should be put to death he was facing a stunning turn of events in his own life. He could have been sentenced to a year in jail; worse yet, he could have faced a felony prosecution, notwithstanding the State's interpretation in this case of the older version of the Texas gun possession statute. True enough he was not an employee of the district attorney's office, but in practical ways his future was even more in its hands. Garcia testified that the sentencing hearing "was one entire week of hell" and he suffered "unrelenting embarrassment." He thought the matter of his arrest was to be held in confidence, but his "name and this case [was] the head story at twelve, five, six and ten o'clock for four straight days."

We do not suggest that being charged with unlawfully carrying a weapon alone disqualified Garcia for jury service under state law or that any outstanding misdemeanor charge should support a finding of implied bias. It is rather the sum of all factual circumstances surrounding this juror--in particular, the power of the District Attorney, and the timing and sequence of events--that compels this conclusion.[26] As Lord Coke put it, a juror must be as "indifferent as he stands unsworne."[27] That there is no evidence that the District Attorney did anything to exploit his power over juror Garcia is of no moment. That the power presents an intolerable

---

[26] Precedent to and implicit in our finding of implied bias is the judgment that reasonable jurists could not disagree with our legal conclusion.

[27] Co. Litt. 155b, *quoted in Turner v. Louisiana*, 379 U.S. 466, 472 (1965).

10

risk of working its will without the raising of a hand or a nod is the vice here.

III

The State further argues that *Teague v. Lane*[28] bars application of the implied bias doctrine in this case. The State's argument is not without weight, as the Supreme Court has never explicitly required a new trial based on implied bias.[29] However, the Court has long acknowledged the principle,[30] and has implicitly applied it to require a new trial.[31] That is, it is a settled principle of law that there is a set of cases in which misconduct by a juror cannot be ameliorated by a hearing. While the Supreme Court has oft-rejected application of the implied bias principle, in cases such as *Remmer* and *Phillips*, it has never rejected the principle itself. Where, as here, we are merely undertaking the case-by-case application of a settled principle, *Teague* is not implicated.[32]

---

[28] 489 U.S. 288 (1989).

[29] *See Phillips*, 455 U.S. at 222 (O'Connor, J., concurring); *also id.* at 216-17 (noting that the Court had addressed and rejected claims of implied juror bias in *Dennis v. United States*, 339 U.S. 162 (1950) and *Chandler v. Florida*, 449 U.S. 560 (1981)).

[30] *See, e.g.*, *Wood*, 299 U.S. at 133.

[31] *See Phillips*, 455 U.S. at 223 (O'Connor, J., concurring) ("[T]his Court [in *Leonard v. United States*, 378 U.S. 544 (1964)] has used implied bias to reverse a conviction.").

[32] *See Burdine v. Johnson*, 262 F.3d 336, 350-57 (5th cir. 2001) (Higginbotham, J., concurring); *id.* at 352 (noting that the "distinction between cases presenting new rules and cases presenting new facts is central to the functioning of *Teague*" and that "*Teague* does not bar a federal court from reviewing the application of an old rule to new facts in state court").

11

## IV

The judgment of the District Court denying federal habeas is reversed. This case is remanded to the district court for entry of an order directing the State of Texas to either conduct a new sentencing hearing or impose a sentence of other than death as provided by applicable state law.

REVERSED and REMANDED with instructions.