The PEOPLE of the State of Colorado, Plaintiff–Appellee and Cross–Appellant,

v.

Ervin Lee PAGAN, Defendant–Appellant and Cross–Appellee.

Nos. 04CA0527, 04CA0873.

Colorado Court of Appeals, Div. I.

Sept. 21, 2006.

Certiorari Denied July 3, 2007.

John W. Suthers, Attorney General, Roger G. Billotte, Assistant Attorney General, Denver, Colorado; John Newsome, Jr., District Attorney, Robyn J. Cafasso, Deputy District Attorney, Doyle Baker, Deputy District Attorney, Colorado Springs, Colorado, for Plaintiff–Appellee and Cross–Appellant.

David S. Kaplan, Colorado State Public Defender, Cynthia Camp, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant and Cross–Appellee.

Opinion by Judge GRAHAM.

Defendant, Ervin Lee Pagan, appeals the judgment of conviction entered upon a jury verdict finding him guilty of theft from an at risk adult of over $500. The People cross-appeal the trial court's order of restitution. We affirm the judgment of conviction, vacate the order of restitution, and remand the case for further proceedings.

Defendant was charged with one count of theft of $15,000 or more, and one count of theft from an at risk adult of $500 or more but less than $15,000. After a jury trial, defendant was acquitted of theft of $15,000 or more, but convicted of theft from an at risk adult of $500 dollars or more but less than $15,000. He was sentenced to four years probation and ordered to pay restitution in the amount of $15,000, plus interest, in restitution.

## I. Late Discovery

Defendant argues that the trial court erred in not precluding evidence of his bank records because the prosecution had failed to produce the information before trial. Specifically, defendant argues that the court's ruling resulted in an unequal "playing field" and that he did not have adequate time to cross-examine or combat the evidence contained in the bank records. We disagree.

Crim. P. 16 governs discovery in a criminal proceeding and outlines the procedures the parties are required to follow. Certain information must be disclosed without a formal request, and Crim. P. 16(V)(a) and related rules provide for sanctions in the event that the discovery rules are not followed.

Crim. P. 16(III)(g) states:

If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule or with an order issued pursuant to this rule, the court may order such party to permit the discovery or inspection of materials not previously disclosed, grant a continuance, prohibit the party from introducing in evidence the material not disclosed or enter such other order as it deems just under the circumstances.

The rule gives the trial court broad discretion in determining the appropriate

remedies for violations. *People v. Pronovost,* 773 P.2d 555 (Colo.1989).

■ When exercising its discretion in fashioning remedies for violations of Crim. P. 16, the court should impose the least severe sanction that will ensure full compliance with the discovery rules. However, an order imposing sanctions will amount to an abuse of discretion only when the order is manifestly arbitrary, unreasonable, or unfair. *People v. Cobb,* 962 P.2d 944 (Colo.1998); *People v. Dist. Court,* 808 P.2d 831 (Colo.1991).

■ In determining an appropriate sanction, a trial court should consider the reasons why disclosure was not made; the extent of the prejudice to the defendant, if any; the feasibility of rectifying the prejudice by a continuance; and any other relevant circumstances. *People v. Dist. Court, supra.*

■ Here, during the second day of trial and the first day of testimony, the defense informed the court that it had just been provided with "a stack of documents over an inch thick from Pikes Peak National Bank." The documents were defendant's bank records—mainly bank statements and returned checks that were seized from defendant's home. Defense counsel requested that the documents be excluded because the prosecutor had violated Crim. P. 16 by not turning them over before trial. The court denied defense counsel's request, but ordered the prosecutor to refrain from referring to the documents for the rest of the day so that defense counsel could review the documents overnight.

The next day, defense counsel stated that he had reviewed the documents and understood them, but had not had time to discuss them with defendant to prepare a defense. Defense counsel again asked the court to preclude the prosecution from using the documents at trial.

The prosecutor explained that, before trial, defense counsel was provided a spread sheet summarizing all the bank records. The prosecutor also stated that the bank records, which were placed in an evidence locker, were itemized on the execution of the search warrant and the evidence invoice and were referred to at the preliminary hearing.

The court directed that the trial proceed with the examination of witnesses and that, if necessary, the court would recess until 1:30 p.m. so that defense counsel could review the evidence with defendant. Following testimony of a police officer and the district attorney's investigator, the court asked the prosecutor whether it would be necessary to introduce each individual bank statement and check or whether bank statement summaries would suffice. The prosecutor informed the court that the summaries would be sufficient. Asked to comment on this procedure, defense counsel responded, "Our objection remains. However, we are more satisfied with that."

Although the prosecutor violated Crim. P. 16, the trial court determined that the appropriate remedy was to grant defendant time to review the documents. *See People v. Loggins,* 981 P.2d 630 (Colo.App.1998).

We find no error in the trial court's remedy for three reasons. First, the material was not exculpatory to defendant.

Second, defendant suffered no prejudice as a result of the late disclosures. The actual bank records were never admitted into evidence; only summaries were admitted; and those were properly disclosed to defense counsel prior to trial. Defendant cannot argue that he was unfairly surprised. The bank documents were also described in the statement summaries provided to defense counsel before trial. The documents were also itemized in the search warrant and the evidence invoice, and there was testimony about them at the preliminary hearing. Because the documents included defendant's own bank account records and cancelled checks, defendant cannot claim that the information was unknown to him. Moreover, any claim by defendant at the appellate level that he was unfairly surprised and unable to prepare adequately for cross-examination is thoroughly discredited by his failure to move for a continuance or a new trial at the trial level. *Cf. United States v. McPartlin,* 595 F.2d 1321 (7th Cir.1979) (failure of defendants to renew request for a continuance thoroughly discredits their assertion that they were prejudiced by the timing of disclo-

sure); *People v. Graham*, 678 P.2d 1043 (Colo.App.1983).

Third, the information was relevant to show what defendant did with the victim's money.

Given the scope of the violation and the nature of the material involved, we conclude that the trial court's ruling was not arbitrary, unreasonable, or unfair under these circumstances, and we therefore perceive no abuse of discretion in the trial court's admitting the bank record summaries or failing to sanction the prosecution more severely. *See People v. Cobb, supra.*

## II. Request for Mistrial

■ Defendant further contends that the trial court erred in denying his motion for a mistrial after one witness mentioned that defendant's bank account had been garnished. We are not persuaded.

During direct examination of the district attorney's investigator, the prosecutor asked whether there were other categories of withdrawals from defendant's account, and the investigator answered, "I had a category for garnishments." The trial court immediately interrupted the testimony and said, "We don't want to hear about those."

When the prosecutor moved to admit the summary pages, defense counsel objected to the summary's reference to garnishments and asked that the references be removed. The trial court ordered that all references to garnishments be removed.

Defense counsel then moved for a mistrial, arguing that the handling of money was an issue in the trial, and therefore the references to garnishments prejudiced defendant's case. Defense counsel refused the trial court's offer to provide a limiting instruction, explaining that he did not want to draw more attention to the garnishments.

The trial court denied the motion for mistrial, stating that, although there may have been garnishments, the garnishments did not mean that defendant was fraudulently misappropriating money. The court ordered that there be no further references to garnishments during the trial.

■ A mistrial is the most drastic remedy and is to be granted only when the prejudice incurred is too substantial to be remedied by other means. *People v. Collins*, 730 P.2d 293 (Colo.1986); *People v. Salazar*, 920 P.2d 893 (Colo.App.1996).

■ A trial court can better evaluate any adverse effect that improper testimony might have upon a jury than can a reviewing court. Thus, absent an abuse of discretion, the trial court's denial of a motion for mistrial will not be disturbed on review. *People v. Price*, 903 P.2d 1190 (Colo.App.1995).

Considering the speculative nature of any prejudice to defendant, the fact that the prosecution did not intentionally elicit the remark, the brief nature of the comment, the trial court's immediate admonition to the witness not to refer to the garnishments, the removal of all garnishment references on the statement summaries, the court's offer to provide a curative instruction, the court's order prohibiting any further reference to the garnishments, and the overwhelming evidence of defendant's guilt, we cannot conclude that its refusal to grant a mistrial was an abuse of discretion. *See People v. Price, supra.*

## III. Restitution

■ On cross-appeal, the People contend that the trial court erred in concluding that the doctrine of collateral estoppel barred an award of restitution over $15,000. We are therefore called upon to address whether a sentencing court is barred by collateral estoppel and double jeopardy principles from considering acquitted conduct in determining an award of restitution.

The People argue that collateral estoppel only applies where the issue to be relitigated was subject to the same burden of proof. In other words, according to the People, the amount of the restitution order can be relitigated on appeal, despite the jury's verdict that defendant took no more than $15,000, because that verdict required proof beyond a reasonable doubt. In contrast, to obtain an order for full restitution, the People need only show the losses by a preponderance of the evidence. We agree with the People.

## A. Full Restitution

Colorado's sentencing scheme requires that "[a] s a condition of every sentence to probation, the [trial] court *shall order* that the defendant make *full restitution* pursuant to" Colorado's restitution statutes. Section 18–1.3–205, C.R.S.2005 (emphasis added); *see also Roberts v. People,* 130 P.3d 1005 (Colo.2006). Colorado's restitution statutes emphasize restitution as a crucial element of sentencing. *See* §§ 18–1.3–601 to 18–1.3–603, C.R.S.2005. The General Assembly recognized the value of restitution as a "deterrent to future criminality," as a "mechanism for the rehabilitation of offenders," and as compensation for the "suffering and hardship" of victims and their families. Section 18–1.3–601(1)(b, d), C.R.S.2005.

As a condition of probation, trial courts must order restitution to compensate victims for "any pecuniary loss suffered by a victim," including the "loss of use of money," and "other losses or injuries proximately caused by an offender's conduct and that can be reasonably calculated and recompensed in money":

> "Restitution" means any pecuniary loss suffered by a victim and includes but is not limited to all out-of-pocket expenses, interest, loss of use of money, anticipated future expenses, rewards paid by victims, money advanced by law enforcement agencies, money advanced by a governmental agency for a service animal, adjustment expenses, and other losses or injuries proximately caused by an offender's conduct and that can be reasonably calculated and recompensed in money.

Section 18–1.3–602(3)(a), C.R.S.2005; *see also* § 18–1.3–205; *Roberts v. People, supra.*

 A trial court has broad discretion in determining the appropriate terms and conditions of restitution orders. *People v. Dillingham,* 881 P.2d 440 (Colo.App.1994). Absent a gross abuse of discretion, the court's ruling will not be disturbed on appeal. *People v. Dillingham, supra; People v. Quinonez,* 701 P.2d 74 (Colo.App.1984), *aff'd in part and rev'd in part on other grounds,* 735 P.2d 159 (Colo.1987) (Quinonez II ). A trial court would necessarily abuse its discretion if it based its ruling on an erroneous view of the law. *People v. Wadle,* 97 P.3d 932 (Colo. 2004).

 The People's burden of proof for establishing the amount of restitution owed is a preponderance of the evidence. *People v. Hoisington,* 902 P.2d 887 (Colo.App.1995).

## B. Collateral Estoppel

Here, the prosecution asked the court to impose restitution in the amount of $45,031.96. Defense counsel objected, arguing that, based on the doctrine of collateral estoppel and *Ashe v. Swenson,* 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970), the amount of restitution that the court could impose was limited to $14,999.99, which reflected the jury's verdicts.

The trial court agreed with defense counsel and ordered restitution in the amount of $15,000, plus interest. It noted that the two charges involved the same victim, the same set of facts, and the same financial loss and concluded:

> In this particular case the defendant was tried for just general theft of more than $15,000. He was found not guilty of it. And in the Court's opinion using the same analysis as in *Ashe v. Swenson* and in *People v. Arrington,* [682 P.2d 490 (Colo. App.1983) ], there is only one possible explanation that justifies the verdict; that is, the theft wasn't more than $15,000....

> So the Court feels compelled to accept the reasoning of the defense on this point. The Court does believe, however, that all the verdicts of the jury means is that the theft was no more than $15,000.

 The doctrine of collateral estoppel is incorporated in the Double Jeopardy Clause. *Ashe v. Swenson, supra,* 397 U.S. at 445, 90 S.Ct. at 1195. Collateral estoppel guarantees that "when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Ashe v. Swenson, supra,* 397 U.S. at 443, 90 S.Ct. at 1194.

Relying on *Ashe,* a division of this court held in *People v. Arrington, supra,* that a defendant's acquittal constituted a conclusive

determination that he was not the perpetrator of the prior robbery, and therefore collateral estoppel barred admission of the prior act evidence in a subsequent proceeding against that defendant. The sole issue in both cases was the identity of the perpetrator—in the first case, to determine the defendant's guilt, and in the second, to determine the admissibility of the evidence under CRE 404(b). *People v. Arrington, supra.*

### C. Double Jeopardy and Burden of Proof

However, after *Ashe* and *Arrington,* the Supreme Court in *Dowling v. United States,* 493 U.S. 342, 110 S.Ct. 668, 107 L.Ed.2d 708 (1990), held that the introduction of evidence relating to a crime that the defendant had previously been acquitted of committing did not violate the Double Jeopardy or Due Process Clauses of the Constitution. In so ruling, the *Dowling* Court distinguished *Ashe,* stating that, unlike in *Ashe,* the prior acquittal did not undermine an ultimate issue in the case before it. The Dowling Court refused to extend Ashe and the collateral estoppel doctrine to exclude, in all circumstances, relevant and probative evidence that is otherwise admissible under the rules of evidence simply because it relates to alleged criminal conduct for which a defendant has been acquitted. In reaching its holding, the Supreme Court focused on the different burdens of proof involved. That is, the Supreme Court noted that the first jury had been unable to conclude beyond a reasonable doubt that the defendant was guilty of the charged conduct. In contrast, for information about such conduct to be admissible in the second trial under Fed.R.Evid. 404(b), the defendant's conduct needed only to be established by a preponderance of the evidence. The Court thus held that an acquittal in a criminal case does not preclude the government from relitigating an issue when it is presented in a subsequent action governed by a lower standard of proof. *Dowling v. United States, supra.*

Thereafter, relying on *Dowling,* another division of this court in *People v. Conley,* 804 P.2d 240 (Colo.App.1990), held that collateral estoppel does not bar the introduction of prior act evidence relating to charges of which a defendant had been previously acquitted when it is presented in a subsequent action where the admission of the evidence is governed by a standard of proof lower than that which governed the acquittal.

In *People v. Wallen,* 996 P.2d 182, (Colo. App.1999), another division of this court agreed with the *Conley* analysis and declined to follow *Arrington's* holding that an acquittal is a conclusive determination that the defendant was not the perpetrator of the prior acquitted offense. The division thereby concluded that the defendant's acquittal in a previous case under the higher beyond a reasonable doubt standard did not collaterally estop the court from admitting prior act evidence.

It is well established that sentencing courts may consider both uncharged and acquitted conduct that has been proved by a preponderance of the evidence in determining the appropriate sentence. *See, e.g., United States v. Watts,* 519 U.S. 148, 157, 117 S.Ct. 633, 638, 136 L.Ed.2d 554 (1997) ("[A] jury's verdict of acquittal does not prevent the sentencing court from considering conduct underlying the acquitted charge, so long as that conduct has been proved by a preponderance of the evidence."); *United States v. Mendez–Zamora,* 296 F.3d 1013 (10th Cir. 2002) (an offense need not be ignored for sentencing purposes just because the jury found the defendant not guilty of the offense); *United States v. Valdez,* 225 F.3d 1137 (10th Cir.2000) (the judge's grant of acquittal did not prevent the court from considering whether the government could prove the necessary amount of methamphetamine in the substances relating to the acquitted charges under the lower preponderance of the evidence standard used at sentencing); *cf. People v. Beatty,* 80 P.3d 847 (Colo.App. 2003) (a trial court may consider a wide range of evidence in determining a defendant's sentence, including facts relating to charges of which the defendant has been acquitted); *People v. Phong Le,* 74 P.3d 431 (Colo.App.2003) (where defendant was acquitted of murder, but convicted of other crimes regarding the same victim, sentencing court properly considered defendant's con-

duct that set events in motion that led to victim's death).

■ We also note that a criminal conviction establishing the defendant's culpability is not required to impose restitution. *People v. Borquez*, 814 P.2d 382 (Colo.1991); *Quinonez II, supra; Cumhuriyet v. People*, 200 Colo. 466, 469, 615 P.2d 724, 726 (1980); *cf. People v. Estes*, 923 P.2d 358 (Colo.App.1996) (a restitution order may properly include losses to a victim resulting from a series of uncharged criminal actions of defendant).

Courts in other jurisdictions have approved restitution orders in amounts greater than that proved for conviction. *See Cooper v. State*, 356 So.2d 911 (Fla.Dist.Ct.App. 1978), *quashed on other grounds*, 377 So.2d 1153 (Fla.1979); *People v. Gallagher*, 55 Mich.App. 613, 223 N.W.2d 92 (1974); *State v. Foltz*, 14 Or.App. 582, 513 P.2d 1208 (1973); *State v. Rogers*, 30 Wash.App. 653, 638 P.2d 89 (1981). One court aptly explained:

> Assuming the principal purpose of restitution to be to restore to victims of crime the value of that which they have lost as a result of the crime, rather than to punish the wrongdoer, we can perceive no good reason why the amount should be limited arbitrarily by the maximum dollar value of the offense which a defendant is found to have committed. In particular, we note that the state is obliged to establish the amount of restitution only by the greater weight of the evidence, rather than to the exclusion of all reasonable doubt. We can conceive of cases in which the amount of the victim's loss as a result of the crime could not, for any number of reasons, be established to the exclusion of all reasonable doubt at the time of the trial, but could be established by the greater weight of the evidence at a subsequent restitution hearing. It seems to us that the position argued by appellant would require proof of the amount of a victim's loss to the exclusion of all reasonable doubt during the trial in cases where the offense charged is defined by reference to a dollar amount. Such a result would conflict with the clearly expressed legislative intent that the

amount of restitution need be established only by the greater weight of the evidence. *J.O.S. v. State*, 668 So.2d 1082, 1085 (Fla. Dist.Ct.App.1996) (citations omitted).

Based on this case law, we conclude that the trial court erred in relying on *Ashe* and *Arrington* to rule that the jury's acquittal of defendant on the charge of theft over $15,000 collaterally estopped it from awarding restitution in an amount over $15,000. The jury's acquittal of defendant on the charge of theft over $15,000 did not constitute a finding that defendant did not steal property worth more than $15,000. Rather, the acquittal merely established that the prosecution failed to prove *beyond a reasonable doubt* that defendant stole property worth over $15,000. The trial court was still free to reach a contrary conclusion for restitution purposes under the applicable burden of proof, a preponderance of the evidence. *See People v. Hoisington, supra.*

Thus, even if the jury concluded that there was insufficient evidence to find beyond a reasonable doubt that defendant stole property worth over $15,000, the trial court could still find by a preponderance of the evidence that defendant stole property worth over $15,000 for purposes of ordering restitution. *See United States v. Watts, supra.*

Accordingly, defendant's acquittal of theft over $15,000 under the higher beyond a reasonable doubt standard does not collaterally estop the court upon remand from ordering restitution in an amount over $15,000 if it finds by a preponderance of the evidence that defendant stole property worth over $15,000.

### D. Correction of an Illegal Sentence

■ Defendant urges that reconsideration of the restitution order violates his protection against being placed in jeopardy twice under the doctrine of *People v. Shepard*, 989 P.2d 183 (Colo.App.1999). In light of *Roberts v. People, supra*, we distinguish *Shepard*.

In *Shepard* the defendant appealed a modified order of restitution that increased an earlier order. There it was undisputed that the "defendant's sentence" was "valid." *Peo-*

*ple v. Shepard, supra*, 989 P.2d at 187. The division vacated the modified restitution order because it determined that the trial court could not increase the amount of restitution without violating defendant's right not to be placed in jeopardy twice.

However, the division in *Shepard* was presented with a restitution order that was legal when it was first entered because it made a full award based upon evidence presented. The trial court complied with the restitution statute by entering an order of full restitution based upon the available evidence regarding the victim's losses. Later, evidence was offered to indicate that the victim's losses were higher than those originally presented to the trial court.

In contrast, here the trial court ignored the amount of losses and arbitrarily capped the amount it could award based upon the jury's verdict. In doing so, the court did not comply with the restitution statute.

■■■■ "Sentences that are inconsistent with the statutory scheme outlined by the legislature are illegal.... [A] trial court has the right and the duty to set aside an illegal sentence." *People v. Rockwell*, 125 P.3d 410, 414 (Colo.2005) (citations omitted).

■■■ "A sentence which is beyond the statutory authority of the court is illegal." *Roberts v. People*, 130 P.3d at 1006–07.

Although generally the amount of restitution is a factual determination, here the trial court made no factual determination, instead capping restitution as a matter of law. In contrast, "Colorado's sentencing statute requires '[a]s a condition of every sentence to probation, [trial courts] *shall order* that the defendant make *full restitution* pursuant to' Colorado's restitution statute." *Roberts v. People, supra*, 130 P.3d at 1007 (quoting § 18–1.3–205).

■■■ An illegal sentence may be corrected on remand without violating a defendant's right to be free from double jeopardy. *People v. Dist. Court*, 673 P.2d 991 (Colo.1983); *People v. Smith*, 121 P.3d 243 (Colo.App. 2005) (a sentence that is contrary to legislative mandates is illegal and may be corrected at any time by a sentencing court without

violating a defendant's rights against double jeopardy); *People v. Reynolds*, 907 P.2d 670 (Colo.App.1995) (an unlawful sentence may be corrected by a sentencing court at any time under Crim. P. 35(a)); *cf. People v. Harman*, 97 P.3d 290, (Colo.App.2004) (because restitution is a part of the criminal sentence, once a *legal* sentence is imposed and a defendant has begun serving it, an increase in the amount of restitution ordered also violates the constitutional prohibition against double jeopardy).

Thus, we conclude that the sentence was illegal to the extent that the court capped the restitution award without considering whether the victim was entitled to an amount above $15,000, and that portion of the sentence must be vacated. On remand the court must determine restitution based upon the principles set forth in *Roberts v. People, supra.*

### IV. *Apprendi–Blakely* Issues

Given our remand for further proceedings, it would be premature to resolve defendant's claim that an increase in the restitution amount violates *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), and *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004).

The judgment is affirmed, the order of restitution is vacated, and the case is remanded to the trial court for further proceedings consistent with the views expressed in this opinion.

Judge MÁRQUEZ and Judge TERRY concur.