**The PEOPLE of the State of Colorado, Plaintiff–Appellee,**

v.

**Kenneth A. DAHL, Defendant–Appellant.**

No. 04CA1206.

Colorado Court of Appeals, Div. VI.

Feb. 22, 2007.

Rehearing Denied April 5, 2007.*

* Russel, J., would GRANT.

John W. Suthers, Attorney General, John J. Fuerst, III, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Douglas K. Wilson, Colorado State Public Defender, Tracy C. Renner, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge DAILEY.

Defendant, Kenneth A. Dahl, appeals the judgments of conviction entered upon jury verdicts finding him guilty of second degree burglary, first degree criminal trespass, and theft under $100. We reverse and remand for a new trial.

Defendant and another man were stopped in a similar make and model of car as that used a few minutes earlier in a nearby burglary. Inside the vehicle, police found a CD case and some CDs that had been taken from the backseat of the victim's car.

At trial, the other man denied that he and defendant had gone to the victim's house. He also denied knowing how the victim's CD case came to be in the car.

## I.

Because the trial was expected to last only a few days, the trial court, even knowing that defendant would not waive his right to a jury of twelve persons, decided not to seat an alternate juror. Following closing arguments at the end of the second day of trial, the jury was ordered to return the following morning to begin deliberations.

The following morning, all but one of the jurors returned to the courthouse. Although the trial court sent sheriff's officers to the juror's home, the juror could not be located. Defendant subsequently moved for a mistrial based on the juror's apparent unwillingness to participate further in the case. The trial court denied the motion, noting that there was always the possibility that the juror had a legitimate reason for his absence. The trial court then issued a warrant for the juror's arrest and released the other jurors until the following morning.

Later that same day, the missing juror was arrested and brought before the court. The court addressed the missing juror, as follows, out of the presence of the other jurors:

[THE COURT]: You've inconvenienced a lot of people. You've caused 11 other people to miss a day's wages. You've inconvenienced two busy lawyers. You've inconvenienced the Court. And I'm assuming, although you can tell me otherwise if you believe you want to, that you heard me when I said everybody was supposed to be back here at 8:00 this morning.

[JUROR]: I did.

[THE COURT]: Well, let me just tell you for starters, that in 36 years as a lawyer and 8 years as a judge, I've never seen anything like that, and I'm citing you for contempt of this Court. I'm not yet finding you in contempt, because that's going to have to be done by another judge, and you'll have the right to have a lawyer represent you.

There are a number of sanctions that the Court can impose, including sentencing you up to 180 days' jail, which, at the moment, strikes me as a very attractive option.

At that point, the court inquired what, if anything, the juror had to say for himself, to which the juror responded, "A friend of mine killed himself yesterday. I'm not doing very well." According to the juror, he coped with the news of his friend's death by turning "to a bottle." He apologized for "dealing with [his] problems the way that [he] did and for not showing up," and said, "It wasn't right."

The trial court then stated:

[THE COURT]: Well, there are a number of things the Court can do to sanction you. As I say, up to and including 180 days' jail time. But right now, what the Court is most concerned about is trying to get this jury to deliberate on this case.

. . . .

And would you be able to deliberate fairly in this case; which is, following the instructions of law that the Court gave to the jury and considering the evidence that has been presented in the case?

[JUROR]: Yes. I believe so. Since I've heard the whole trial, I think I can do that.

The juror noted that he reacted as he did to the news of his friend's death because "the last time I saw him, he told me he was going to kill himself, and I didn't take it seriously."

The court thanked the juror, and noted that, after the case was over it would address the appropriate penalty for the juror. The court added that it was interested in "trying this case to conclusion." It then ordered the juror to return the next morning to begin deliberations and not to discuss what had happened with any of the other jurors.

The dialogue between the court and the juror continued, however. Once more, the court returned to the subject of the juror's absence from trial and the consequences of his actions:

[THE COURT]: [A]t some later time, we will address the question of appropriate penalties for you.

But I don't know. I would say if we were just talking money . . . figuring that we've got two busy attorneys here and all the sheriff's deputies we've had out looking for you this morning, including entering your house, by the way, at my order, we're talking many, many thousands of dollars. And that's the money alone.

In the meantime, the defendant's wondering what's going to happen in this case. And the People are wondering what's going to happen in this case, and it's all because you chose to inflict your personal problems on this process, and that's just not acceptable.

Do you understand what the Court is saying?

[THE JUROR]: I do.

After the juror left, defendant renewed his motion for mistrial arguing, inter alia, that (1) the juror would be too distracted by his friend's suicide to be effective and (2) the juror was "in a situation that . . . no juror really should be in, in which the judge that is sitting on the trial basically . . . holds . . . serious sanctions in his hands."

The trial court ruled that it would inquire the next day whether all twelve jurors could deliberate fairly in the case and that if it received twelve affirmative responses (which it did) the jurors would retire to begin deliberations (which they did).

Within three hours of commencing deliberations, the jury returned verdicts convicting defendant on all charges.

## II.

Defendant contends that the trial court erred in denying his motion for a mistrial. Under the circumstances, we agree.

Because a mistrial is a drastic remedy for trial error, it is to be granted only

when the prejudice incurred is too substantial to be remedied by other means. *People v. Pagan,* — P.3d —, —, 2006 WL 2691709 (Colo.App. No. 04CA0527, Sept. 21, 2006). A trial court's decision to grant or deny a motion for a mistrial will not be disturbed absent an abuse of discretion. *People v. Perea,* 126 P.3d 241, 246 (Colo.App. 2005).

■ "The due process clauses of the United States and Colorado Constitutions guarantee every criminal defendant the right to a trial by an impartial jury." *People ex rel. Faulk v. Dist. Court,* 673 P.2d 998, 1000 (Colo.1983).

■ Due process is satisfied by "a jury capable and willing to decide the case solely on the evidence before it, and a trial judge ever watchful to prevent prejudicial occurrences and to determine the effect of such occurrences when they happen." *Smith v. Phillips,* 455 U.S. 209, 217, 102 S.Ct. 940, 946, 71 L.Ed.2d 78 (1982).

Here, we seriously question whether defendant was provided with twelve jurors who were capable and willing to decide the case solely on the evidence before them.

■ In assessing the issue, we initially reject defendant's assertion that the circumstances created an impermissible risk that the juror would be biased in favor of the prosecution. In *Brooks v. Dretke,* 418 F.3d 430 (5th Cir.2005), the case upon which defendant relies, a juror was arrested during the sentencing phase of a capital case. The district attorney's office that was prosecuting the death penalty case was also in charge of prosecuting the case against the juror. Because the district attorney's office held the juror's future in its hands, there was, despite the juror's assurances to the contrary, an intolerable risk that the juror might try, through his vote, to curry favor with the prosecution. *See also Thompson v. State,* 300 So.2d 301, 303 (Fla.Dist.Ct.App. 1974)("[T]he purpose of disqualifying a person who has a pending prosecution is to avoid the possibility that that person might vote to convict in the hope of getting more favorable treatment from the prosecution in his own case.").

Here, in contrast to *Brooks,* nothing the court said or did intimated in any way that the juror's future rested in the hands of the prosecution. While citing the juror for contempt, the court never indicated that the juror would be "prosecuted," much less by the same prosecuting attorney's office. The court spoke in terms of "sanctions," "penalties," or "a number of things *the Court [could]* do" to him (emphasis added).

Indeed, in the trial court, defendant recognized that the circumstances did not create a risk of bias in favor of the prosecution when he stated, "We don't know where the cards will fall," that is, whether the juror would vote to convict or to acquit "because of what has happened to him."

■ Our rejection of a claimed prosecutorial bias does not, however, end the inquiry. Defendant also argues that the trial court's actions detrimentally affected the juror's ability or inclination to participate fully in the deliberations. We agree with this argument.

■ A court has inherent authority to use all powers reasonably required to protect its ability to function efficiently and to administer justice. *People v. Aleem,* 149 P.3d 765, 774 (Colo.2007). However, "[i]n Colorado, a verdict in a criminal trial must be unanimous," and "[u]nanimity requires a free and untrammeled deliberative process that expresses the conscientious conviction of each individual juror." *People v. Lewis,* 676 P.2d 682, 686 (Colo.1984). A court may not act in a manner that could coerce a verdict by causing a juror to surrender his or her honest convictions as to the weight and effect of the evidence for the mere purpose of returning a verdict. *See Key v. People,* 865 P.2d 822, 827 (Colo.1994)(court's scheduling conference with jurors carried potential for coercing jurors into joining verdict); *see also Allen v. People,* 660 P.2d 896, 899 (Colo.1983) (reversing conviction because court gave a "time-fuse" instruction).

In *Hopkins v. United States,* 595 A.2d 995 (D.C.1991), the defendant contended that he had been deprived of the continued, objective, and disinterested judgment of three jurors who, in the middle of trial, were found to

be in contempt of court (and fined $25) for returning fifteen minutes late to the courtroom. The court's acts, the defendant argued, may have coerced the jurors into surrendering their conscientiously held views. *See Hopkins v. United States, supra,* 595 A.2d at 996.

In addressing these contentions, the appellate court noted, "For a trial judge to conduct, in the middle of an ongoing criminal trial, a side proceeding involving contempt charges against members of the very body which will pass upon the principal crime at issue is a step to be taken with all due caution." *Hopkins v. United States, supra,* 595 A.2d at 997. Further, the court observed,

> The possible distractive effect upon a juror who has just been summarily convicted of criminal contempt ... may be compared with the general question quite routinely asked at voir dire whether, for any reason, a prospective juror thinks he or she could not give his or her full time and attention to the evidence.

*Hopkins v. United States, supra,* 595 A.2d at 997 n. 6.

In a concurring opinion, Judge Schwelb wrote,

> I have serious misgivings as to whether a juror who had just been held in criminal contempt after a proceeding of the kind that occurred here would be able to shake it all off at once and to focus his or her attention fully on the drug case against [the defendant].

*Hopkins v. United States, supra,* 595 A.2d at 998 (Schwelb, J., concurring).

Here, the trial court only threatened, as opposed to actually imposed, contempt sanctions before deliberations. Nonetheless, the *Hopkins* case is instructive because, in his concurring opinion, Judge Schwelb addressed the problem caused by even a threat of contempt proceedings:

> [T]he [trial] judge might have reproved the jurors on the spot, with or without a warning that he would further address the matter later, and might then have instituted contempt proceedings by notice after the trial. Had he proceeded in this manner,

however, this might perhaps have left the sword of Damocles hanging over the jurors' heads, to the detriment of their concentration on the case which they were there to try.

*Hopkins v. United States, supra,* 595 A.2d at 998–99 (Schwelb, J., concurring) (citation omitted).

The appellate court in *Hopkins* did not reverse the defendant's conviction, largely because the defendant had not preserved the error in the trial court. Here, however, the error was preserved in the trial court. Indeed, in the trial court, defendant noted:

> Now, the situation that [the juror] is in, the Court has ... told him that he has a 180-day jail sentence hanging over his head, and the Court said that—initially, the Court said that the 180 days was looking—and I will quote the Court. The Court said fairly—was looking attractive or was looking very attractive—sounds like an attractive option right now, is I think what the Court said.
>
> And the Court was very stern with [the juror].... I'm not criticizing the Court about that, but the fact remains that the Court was very stern with [the juror], and [the juror] appeared to be very afraid. So he knows that he has the possibility of a— or the probability of a 180-day jail sentence hanging over his head.
>
> I don't see how he can be fair to either side at this point if he is allowed to continue to deliberate.... It's ... very likely that he will try to do whatever he believes will appease the Court, or, conversely, not upset the Court any further.

It was clear, from the trial court's remarks to the juror, what the court wanted. The trial court informed the juror, at one point, that "what the Court is most concerned about is trying to get this jury to deliberate" and, later, that "what the Court is interested in is trying this case to conclusion."

On three separate occasions, the court had severely admonished the juror and identified the serious consequences that could (and most likely would) befall him because of his absence from trial. Like the juror in *Brooks v. Dretke, supra,* 418 F.3d at 435, the "juror

was facing a stunning turn of events in his own life."

In our view, these circumstances created an unacceptably high risk of a coerced verdict, in that the juror would be too preoccupied to give serious attention to analyzing the evidence and arriving at a personal opinion of guilt or innocence and, consequently, would simply fall in line with whatever view prevailed among the other jurors, in order to promptly bring "the case to conclusion." *Cf. State v. Barbosa,* 908 A.2d 1000, 1004 (R.I. 2006) ("jurors must be able to consider the evidence properly submitted without being significantly distracted by anything not in evidence").

We are, of course, cognizant of the juror's assurances to the trial court that he would try to deliberate fairly. However, as defendant argued in the trial court:

> The Court was very threatening toward[ ] [the juror] ... and ... the fact remains that [he's] standing at the podium ... knowing that you could put him in jail for 180 days ... [he] would have said anything he thought the Court wanted to hear him say, and it was pretty obvious what ... you wanted the answer to be, and he gave you that answer.

*See People v. Moore,* 701 P.2d 1249, 1253 (Colo.App.1985) (recognizing that "the most sincere juror's statement that he or she would act impartially cannot compensate for factors which inherently produce prejudice").

Further, in *Brooks v. Dretke, supra,* 418 F.3d at 434, the court noted, "The determination of implied [prosecutorial] bias is an objective legal judgment made as a matter of law and is not controlled by sincere and credible assurances by the juror that he can be fair." This is also the case with respect to the determination of a potentially coerced verdict. *See Morton v. United States,* 415 A.2d 800, 802 (D.C.1980) (an act which creates "a substantial risk of a coerced verdict necessitates, as a matter of law, a mistrial or a retrial depending on how the issue is raised," and regardless of the juror's assurances to the contrary, "[i]f it appears ... that a substantial possibility of a coerced verdict exists, neither the trial court nor this court may speculate it away").

We recognize that the prosecution's case against defendant was strong, if not overwhelming. Nonetheless, "[u]nder our concepts of due process, a criminal trial must be fairly conducted for all defendants, the guilty as well as the innocent." *People v. Vialpando,* 809 P.2d 1082, 1085 (Colo.App.1990).

Here, the nature, number, and tenor of the trial court's comments created a substantial possibility that the juror might forsake his duty duly to deliberate the merits of the case in favor of promptly reaching a disposition, indeed any disposition. Consequently, we conclude that defendant was denied his Sixth Amendment right to have his case decided by twelve attentive and disinterested jurors, *cf. People v. Evans,* 710 P.2d 1167, 1168 (Colo.App.1985)(juror sleeping during critical stage of the proceedings required reversal), and thus, the trial court abused its discretion in denying the motion for mistrial.

### III.

In light of our conclusion, we need not address defendant's other contentions.

The judgments of conviction are reversed, and the case is remanded to the trial court for a new trial.

Judge GRAHAM concurs.

Judge RUSSEL dissents.

Judge RUSSEL dissenting.

The majority concludes that the trial court abused its discretion when it refused to declare a mistrial. I respectfully disagree.

The trial court took appropriate steps to determine whether Juror K and the remaining jurors could deliberate fairly. The court informed the jury that K's failure to appear was the result of "unforeseen matters ... relating to his personal life." It instructed the jurors not to discuss the matter "with anyone, including each other, until this case is over." And it asked each juror, in chambers, the following questions:

1. "Can you still be fair to each side of this case and decide this matter on the basis of the evidence presented at trial and the law the Court has given in its preliminary and final instructions of law which were read to the jury?"

2. "Are you able to treat each of the other 11 jurors as a full participant in the jury deliberation process and respect the views of each of the other 11 jurors?"

Each juror, including K, answered the court's questions in the affirmative. The court apparently found the jurors' answers to be sincere, and we are not in a position to second-guess this determination. *Carrillo v. People,* 974 P.2d 478, 487 (Colo.1999).

Unlike the majority, I do not think that the situation was so inherently prejudicial that we must view the court's ruling as an abuse of discretion. *See People v. Abbott,* 690 P.2d 1263, 1269 (Colo.1984) (denial of mistrial will not be disturbed on appeal absent gross abuse of discretion and prejudice to the defendant). I do not doubt that Juror K felt discomfort and anxiety after hearing the court's remarks. But I think a juror in K's position could set aside such concerns to focus on the task of deliberating, and I trust the trial court's evaluation of K's assurances.

Because I think the court did not abuse its discretion in denying a mistrial, I would address defendant's remaining contentions. I conclude that these contentions are without merit and would therefore affirm the judgment of conviction.