**United States Court of Appeals**
**Fifth Circuit**

**F I L E D**

**March 22, 2006**

**Charles R. Fulbruge III**
**Clerk**

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

No. 04-70023

Carl L. Brooks

Petitioner-Appellant,

versus

Doug Dretke, Director,
Texas Department of Criminal Justice,
Correctional Institutions Division

Respondent-Appellee.

Appeal from the United States District Court
For the Western District of Texas

ON SUGGESTION FOR REHEARING EN BANC

(Opinion 7/20/05, 5th Cir., 418 F.3d 430)

Before HIGGINBOTHAM, DAVIS, and PRADO, Circuit Judges.

HIGGINBOTHAM, Circuit Judge:

The State of Texas asks us to reconsider our grant of habeas relief to Carl L. Brooks.[1] For the following reasons, the petition for rehearing by the panel is denied. The court having been polled at the request of one of the members of the court and a majority of the judges who are in regular active service and not disqualified not having voted in favor (FED. R. APP. P. and 5th CIR. R. 35), Rehearing En Banc is DENIED.

---

[1] *See Brooks v. Dretke*, 418 F.3d 430 (5th Cir. 2005).

The state presents two issues meriting discussion.  First, the state contends that this Court, in granting Brooks habeas relief, relied upon a legal theory that is not "clearly established" by the Supreme Court.[2]  Second, the state contends that this Court, in violation of *Teague v. Lane*,[3] announced a new constitutional rule requiring the mandatory exclusion of certain venire members.  We reject both contentions.

A

While the panel opinion did not recite the now-rote hurdles to relief mandated by AEDPA, it cannot be said that the opinion failed to scrupulously adhere to the deferential standard of review imposed on inferior federal courts considering claims for a writ of habeas corpus.[4]  We maintain that the doctrine of implied bias is "clearly established Federal law as determined by the Supreme Court."[5]

---

[2]*See* 28 U.S.C. § 2254(d)(1)(limiting an inferior federal court's power to grant habeas relief to state court decisions that "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States").

[3]489 U.S. 288 (1989).

[4]*See Brooks*, 418 F.3d at 435 n.26 ("Precedent to and implicit in our finding of implied bias is the judgment that reasonable jurists could not disagree with our legal conclusion."); *id.* at 433 ("[W]hile we are persuaded that the principle of implied bias is settled federal law, its application has been confined to a narrow range of cases."); *see also Williams v. Taylor*, 529 U.S. 406, 407 (2000) (concluding that a state court decision can be an "unreasonable application" of Supreme Court precedent if "the state court identifies the correct governing rule . . . but unreasonably applies it to the facts of the particular state prisoner's case" or if the state court "unreasonably refuses to extend [a] principle to a new context where it should apply").

[5]28 U.S.C. § 2254(d)(1); *see also United States v. Wood*, 299 U.S. 123, 134 (1936) ("The bias of a prospective juror may be actual or implied; that is, it may be bias in fact or bias conclusively presumed as [a] matter of law."); *McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 556-57 (1984) (Blackmun, Stevens, and O'Connor, JJ., concurring) (recognizing that "in exceptional circumstances . . . the facts are such that bias is to be inferred"); *id.* at 558 (Brennan and Marshall, JJ., concurring in the judgment) (same); *Tumey v. Ohio*, 273 U.S. 510, 532 (1927) (implying bias and reversing conviction because of a financially interested judge, even though there was no evidence of actual bias). The pedigree of the implied bias doctrine has even older origins.  *See United*

-2-

The implied bias doctrine neither starts or ends with the Supreme Court's decision in *Smith v. Phillips*.[6]  There, the Court, relying on *United States v. Remmer* ("*Remmer I*"),[7] held that in most cases the remedy for claims of juror bias is a post-event hearing, in which the trial judge can examine the juror and obtain assurances that, despite the event leading to the claim of bias, the person is able to continue serving as an impartial juror.[8] Justice O'Connor, concurring in the judgment, wrote separately to emphasize that, in some circumstances, a juror's assurances could not suffice.[9]  She explained,

> Some examples might include revelation that the juror is an actual employee of the prosecuting agency, that the juror is a close relative of one of the participants in the trial or the criminal transaction, or that the juror was a witness or somehow involved in the criminal transaction.  Whether or not the state proceedings result in a finding of "no bias," the Sixth Amendment right to an impartial jury should not allow a verdict to stand under such circumstances.[10]

---

*States v. Burr*, 25 F. Cas. 49, 50 (D. Va. 1807) (Marshall, C.J., riding circuit) (stating that even with individuals under the influence of personal prejudices who state an ability to serve as fair and impartial jurors, there are circumstances in which "the law will not trust him"); *Dr. Bonham's Case*, 77 Eng. Rep. 646, 652 (C.P. 1610) (Coke, J.) (stating that no man shall be a judge in his own cause); *see also Dyer v. Calderon*, 151 F.3d 970, 984 (9th Cir. 1998) (en banc) (describing the implied bias doctrine as "a rule so deeply embedded in the fabric of due process that everyone takes it for granted").

[6]455 U.S. 209 (1982).

[7]347 U.S. 227 (1954) ("Remmer I").

[8]*Smith*, 455 U.S. at 217-18 (recognizing that "due process does not require a new trial every time a juror has been placed in a potentially comprising situation"); *see also Brooks*, 418 F.3d at 433-34 (recognizing as much and citing cases); *Solis v. Cockrell*, 342 F.3d 392, 399-400 (5th Cir. 2003); *United States v. Sylvester*, 143 F.3d 923, 931-35 (5th Cir. 1998).

[9]*Smith*, 455 U.S. at 224 (O'Connor, J., concurring) ("I read the Court's opinion as not foreclosing the use of implied bias in appropriate situations, and, therefore, I concur.").

[10]*Id.* at 222 (O'Connor, J., concurring).

Following the law in the Fifth Circuit,[11] we stated in the panel opinion that "[o]ur question is whether Garcia's conduct is of the genre of cases Justice O'Connor pointed to in her concurring opinion in *Phillips*: juror conduct not salvageable by post event hearings."[12] We answered that question in the affirmative.

Nothing in *Smith* rejects the doctrine of implied bias, as illustrated by Justice O'Connor's concurring opinion, and the full history of *Remmer* bears this out. *Remmer I* involved only the defendant's bare accusations of improper juror contact. Recognizing the seriousness of the charges, if true, the Supreme Court remanded for an evidentiary hearing--the "hearing" remedy appropriated by *Smith*--to put of record "what actually transpired [and] whether the incidents that may have occurred were harmful or harmless."[13] Nothing in *Remmer I* rejects the notion that sometimes courts must refuse to accept a juror's assurances of impartiality; it was only the posture of *Remmer I*, with the undeveloped record, that prevented the Court from deciding that question on the merits.

Following remand and an evidentiary hearing, the lower courts concluded the incident was harmless,[14] and the Supreme Court granted

---

[11]*See United States v. Scott*, 854 F.2d 697, 700 (5th Cir. 1988) (finding, under *Smith*, that juror was impliedly biased because his brother was a deputy sheriff in an office that investigated the defendant's case); *see also United States v. Nell*, 526 F.2d 1223, 1229 (5th Cir. 1976) (recognizing that juror bias can come to light in two ways: "by express admission or by proof of specific facts showing such a close connection to the circumstances at hand that bias must be presumed").

[12]*Brooks*, 418 F.3d at 434.

[13]*Remmer I*, 347 U.S. at 228-29 (noting that the record contained only an affidavit from the defendant's attorney and several newspaper articles reporting the incident and that the district court denied the motion for a new trial without holding a hearing); *United States v. Remmer* ("Remmer II"), 350 U.S. 377, 379-80 (commenting that "[i]t was the paucity of information relating to the entire situation coupled with the presumption which attaches to the kind of facts alleged by petitioner" that "made manifest the need for a full hearing.").

[14]*United States v. Remmer*, 122 F. Supp. 673, 675 (D. Nev. 1954), *aff'd*, 222 F.2d 720, 720 (9th Cir. 1955).

certiorari a second time. It was then, in *Remmer II*, that the Court found, now with full understanding of the incident, that the evidence "reveals such a state of facts that neither [the juror] *nor anyone else* could say that he was not affected in his freedom of action as a juror."[15] There, a juror in a tax evasion case was offered a bribe in return for a favorable defense verdict. The juror reported the matter to the trial judge, who first disregarded it as a joke but later informed the FBI. An FBI agent interviewed the juror, but to the juror, it was not clear whether the government was contemplating prosecuting the juror for his role. The juror later testified that during the course of the trial, he was "under a terrific pressure."[16] On these facts, the Court quickly concluded no person could serve as an impartial juror. The phrase "nor anyone else" is critical here: *Remmer II* illustrates that there are certain factual circumstances, as illuminated by Justice O'Connor's concurring opinion in *Smith*, in which no reasonable person could not be affected in his actions as a juror and in which the Constitution refuses to accept any assurances to the contrary.[17] In short, *Remmer II* is an application of the

---

[15]*Remmer v. United States*, 350 U.S. 377, 381 (1956) ("Remmer II") (emphasis added). The Court continued, "[The juror] had been subjected to extraneous influences to which no juror should be subjected, for it is the law's objective to guard jealously the sanctity of the jury's right to operate as freely as possible from outside unauthorized intrusions purposefully made." *Id.* at 382.

[16]*Remmer II*, 350 U.S. at 381-82 ("As he sat on the jury for the remainder of the long trial and as he cast his ballot, [the juror] was never aware of the Government's interpretation of the events to which he, however unwittingly, had become a party.").

[17]The Court's application of the implied bias doctrine in *Remmer II* was not good for one day only. In *Leonard v. United States*, 378 U.S. 544 (1964), the Supreme Court implicitly upheld a claim of implied bias. There, the petitioner had been convicted in two successive trials; the jury in the first case announced its verdict in open court in the presence of persons ultimately selected to serve as jurors in the second case. *Id.* at 554. Recognizing the heightened danger of bias, the Supreme Court reversed the second conviction, stating that "[p]rospective jurors who have sat in the courtroom and heard a verdict returned against a man charged with [a] crime in a similar case immediately prior to the trial of another indictment against him should be *automatically disqualified* from

implied bias doctrine; it is clearly established Federal law as determined by the Supreme Court.

Nothing in *Smith* rejects *Remmer II*. Justice O'Connor made it plain in an unchallenged statement that the majority opinion was "not foreclosing the use of implied bias in appropriate situations."[18] This observation is no more than the holding of the Court in *Remmer II*. The majority opinion, while citing *Remmer I*, offered no suggestion that its holding was a retreat from *Remmer II*. Some lower federal courts have read *Smith* as rejecting *Remmer I*'s "presumption of prejudice" in the context of outside influences on jury members.[19] This does not touch the Court's ultimate conclusion, in *Remmer II*, that under certain limited circumstances, no juror can serve impartially. The presumption of prejudice in *Remmer I* put the burden on the government to show a juror's impartiality. Who bears the burden of proving prejudice is not our question.

Bound by the strictures of AEDPA, our question is whether the state court's decision was an objectively unreasonable application of the doctrine of implied bias. The state court concluded that the events surrounding the arrest of juror Garcia, during Brooks's capital-murder trial, were not sufficient to imply bias. We disagree. Juror Garcia was arrested and booked for carrying a loaded, .25 caliber pistol into the courthouse on the day Brooks's sentencing hearing started. Facing the possibility of felony prosecution, Garcia's fate rest in the hands of the same prosecutor now seeking the death penalty in Brooks's trial. Throughout

_____

serving at the second trial." *Id.* When jurors are "automatically disqualified," no amount of assurance from them can satisfy the Sixth Amendment's impartial jury guarantee.

[18]*Smith*, 455 U.S. at 224 (O'Connor, J., concurring).

[19]*See Parker v. Head*, 244 F.3d 831, 839 n.6 (11th Cir. 2001) (collecting cases).

-6-

sentencing, Garcia never knew whether he would be prosecuted. He testified that the sentencing hearing was "one entire week of hell," that he suffered "unrelenting embarrassment," and that although he thought the matter would be held in confidence, it was "the head story at twelve, five, six and ten o'clock for four straight days."[20] The prosecutor's power over Garcia presented an intolerable risk, one that denied Brooks his constitutionally entitled impartial jury, and we maintain that no reasonable jurist could disagree with our legal conclusion.

<u>B</u>

Next, the state contends that *Brooks* requires a finding of implied bias any time the district attorney has the power to prosecute a sitting juror for a misdemeanor, in violation of the ban on new rules in postconviction proceedings.[21] We disagree. *Brooks* does not go so far.[22] This is only an application of settled Supreme Court law to a set of facts, and it does not run afoul of *Teague*'s prohibition on creating new law.[23]

---

[20]*Brooks*, 418 F.3d at 435.

[21]*See Teague v. Lane*, 489 U.S. 288, 301 (1989).

[22]*Brooks*, 418 F.3d at 435 ("We do not suggest that being charged with unlawfully carrying a weapon alone disqualified Garcia for jury service under state law or that any outstanding misdemeanor charge should support a finding of implied bias. It is rather the sum of all factual circumstances surrounding this juror--in particular, the power of the District Attorney, and the timing and sequence of events--that compels this conclusion.").

[23]*See Burdine v. Johnson*, 262 F.3d 336, 350-57 (5th Cir. 2001) (en banc) (Higginbotham, J., concurring) (noting that the "distinction between cases presenting new rules and cases presenting new facts is central to the functioning of *Teague*" and that "*Teague* does not bar a federal court from reviewing the application of an old rule to new facts in state court").