**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**
June 4, 2009

Charles R. Fulbruge III
Clerk

No. 07-70038

LARRY HATTEN

Petitioner - Appellant

v.

NATHANIEL QUARTERMAN, DIRECTOR, TEXAS DEPARTMENT OF
CRIMINAL JUSTICE, CORRECTIONAL INSTITUTIONS DIVISION

Respondent - Appellee

Appeal from the United States District Court
for the Southern District of Texas

Before JONES, Chief Judge, and REAVLEY and PRADO, Circuit Judges.

EDITH H. JONES, Chief Judge:

Appellant Larry Hatten seeks a writ of habeas corpus related to his capital conviction for the murder of five-year old Isaac Jackson. The district court denied relief but granted a certificate of appealability. Finding no error in his only cognizable claims of juror bias and improper shackling at trial, we affirm.

## I. Background

In the early morning hours of September 19, 1995, Larry Hatten broke into Isaac Robinson's apartment in Corpus Christi, Texas, went to the bedroom, kicked the door open, and repeatedly fired a handgun into the darkness. Hatten believed he was retaliating against Robinson for setting fire to cars following an

escalating series of quarrels among local drug dealers. Hatten admitted that he intended to kill Robinson, but Robinson was not home. Instead, Robinson's girlfriend, Tabitha Thompson, and their five-year-old son, Isaac Jackson, were in the bed. Hatten severely wounded Thompson with four shots and killed Jackson with two. After firing, Hatten moved to the kitchen, but fled when Thompson emerged from the bedroom. Police later arrested Hatten after finding him driving around covered in blood.

In February 1996, Hatten was convicted of capital murder and sentenced to death.[1] In April 1998, on direct appeal, the Texas Court of Criminal Appeals affirmed Hatten's conviction, but vacated the sentence. Hatten did not appeal his conviction to the United States Supreme Court. Eight months later, a second jury sentenced Hatten to death. The Court of Criminal Appeals affirmed this sentence, and the Supreme Court denied certiorari.

Hatten's state post-conviction proceedings contain a regrettable turn of events that ultimately did not prejudice his claims, but certainly could have. We relay them to explain our standard of review for claims arising from the guilt phase of his trial. In Texas, habeas proceedings run concurrently with direct appeal. *See* TEX. CODE CRIM. PROC. art. 11.071 § 4(a). Accordingly, the Court of Criminal Appeals appointed counsel, Ed Joyal, to pursue post-conviction remedies before the conclusion of Hatten's direct appeal. Joyal filed an initial application for habeas relief on December 31, 1997. When the Court of Criminal Appeals vacated Hatten's sentence, the petition was still pending, and the court never ruled on it.

After Hatten was resentenced in December 1998, Hatten requested that Joyal represent him, but Joyal withdrew and the trial court appointed attorney

---

[1] Under the transferred intent doctrine, TEX. PENAL CODE § 6.04(b), Hatten's intent to kill Robinson transfers to his killing Jackson. In Texas, murdering a child under six years old is capital murder. TEX. PENAL CODE § 19.03(a)(8).

Grant Jones. On August 7, 2000, Jones filed a new state habeas petition asserting claims arising from Hatten's second sentencing hearing, but he did not incorporate the claims Joyal raised in the 1997 petition challenging the conviction. The trial court promptly entered a recommendation on the 2000 petition, and the Court of Criminal Appeals denied relief on Hatten's second petition. To this day, the Court of Criminal Appeals has not ruled on the claims presented in Hatten's initial 1997 petition.

Hatten petitioned for a writ of habeas corpus in federal court raising some of the claims from both state court petitions. The federal judge stayed the proceedings, while the parties attempted to resolve the status of the 1997 petition in Texas courts, but no final state decision emerged.[2] The district court concluded that the claims presented in Hatten's 1997 petition were exhausted and not procedurally barred, but it denied relief on the merits of each. The court also ruled that Hatten failed to exhaust in state proceedings nine claims presented for the first time in his federal petition. The court then granted a certificate of appealability regarding all claims.

Hatten raises four claims on appeal. Pertinent to the guilt phase of trial, Hatten contends that he was deprived of an impartial jury and that his appearance before the jury in shackles was prejudicial and violated due process. Hatten also argues that cause and prejudice excuse his failing to exhaust claims that were not raised before the state courts. Finally, he contends, for the first time in this appeal, that cumulative error fatally infected his trial.

---

[2] Hatten litigated in the state trial court, and the state moved for dismissal as moot in the Court of Criminal Appeals. A letter from the appellate court's general counsel, dated August 18, 2003, to the Texas trial court states that the appeal was dismissed as moot, but the court formally declined to enter an order. We therefore have no evidence that the Court of Criminal Appeals ever ruled on Hatten's 1997 petition claims.

## II. Standard of Review

Hatten's first two claims were raised in his 1997 petition, on which the Texas Court of Criminal Appeals never ruled. In this unusual situation, Hatten exhausted his claims, but there is no final Texas court decision to review.[3] In the absence of a state court "adjudicat[ion] on the merits" of a petitioner's claim, to which AEDPA requires deference under 28 U.S.C. § 2254(d),[4] we review the district court's findings of fact for clear error and its legal conclusions *de novo*. *See Nobles v. Johnson*, 127 F.3d 409, 416 (5th Cir. 1997) (applying pre-AEDPA standard of review where state court arguably did not adjudicate habeas petition on the merits); *Boyd v. Scott*, 45 F.3d 876, 879 (5th Cir. 1994) (stating pre-AEDPA standard of review).

## III. Discussion

### A. Biased Juror Claim

Hatten asserts that Reginald Hollins, a juror during his first trial, was biased, depriving Hatten of a fair trial under the Sixth Amendment. The Sixth Amendment guarantees an impartial jury, and the presence of a biased juror may require a new trial as a remedy. U.S. Const. amend. VI; *see Solis v. Cockrell*, 342 F.3d 392, 400 & n.44 (5th Cir. 2003). A juror is biased if his "views would prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath." *Soria v. Johnson*, 207 F.3d 232, 242 (5th Cir. 2000) (quoting *Wainwright v. Witt*, 469 U.S. 412, 424, 105 S. Ct. 844, 852 (1985)).

---

[3] Texas trial courts only make recommendations to the Court of Criminal Appeals but do not rule on habeas petitions. *Ex Parte Brown*, 205 S.W.3d 538, 546 (Tex. Crim. App. 2006).

[4] As will be seen, the state objected to juror Hollins's remaining on the jury after he was identified by witness Robinson. It could be argued that AEDPA's deferential standards apply to this decision, although a different perspective might guide the court in ruling on a prosecution rather than a defense motion to remove a juror. Because we reject Hatten's claim under pre-AEDPA standards, however, we need not speculate on this question.

Hatten has alleged both actual and implied (or presumed) bias related to Hollins's jury service. Actual bias exists when the juror failed to answer a material question honestly on voir dire, and a correct response would have provided a valid basis for a challenge for cause. *United States v. Bishop*, 264 F.3d 535, 554 (5th Cir. 2001) (citing and applying *McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 556, 104 S. Ct. 845, 850 (1984)). A claim of alleged bias is ordinarily addressed in a hearing where the judge examines the juror and obtains assurances of the juror's impartiality. *Brooks v. Dretke*, 444 F.3d 328, 330 (5th Cir. 2006) (citing *Smith v. Phillips*, 455 U.S. 209, 217-18, 102 S. Ct. 940, 946 (1982)). There is also a narrow class of relationships described by Justice O'Connor's concurrence in *Smith v. Phillips*, and recognized by this court on several occasions, for which a juror can be presumed biased. *See Solis*, 342 F.3d at 395-98 (discussing this court's implied bias case law).

Hatten complains that Hollins's bias is reflected by the facts that: (a) Hollins lied on his juror questionnaire and during his questioning regarding his drug use; (b) Hollins concealed the scope of his relationship with Isaac Robinson, the victim's father, and with Hatten's stepfather; and (c) Hollins was threatened with prosecution during trial and consequently must have favored the prosecution.

The morning after Isaac Robinson testified he told his lawyer that he recognized one of the jurors, Reginald Hollins.[5] Learning of this identification, the state challenged Hollins for cause. Hatten's trial counsel remained mute. Outside the presence of the jury, the court held a hearing to investigate Hollins's potential bias. With Hollins excluded from the courtroom, Robinson testified that he recognized Hollins as a customer for his crack cocaine "four or five" times

---

[5] Until then, Robinson had been "under the rule," a witness excluded from the courtroom.

during the past "almost a year."[6] Other than through these "business transactions," the two were not friends. Robinson also testified that Hollins was acquainted with Hatten's stepfather, who went by the nickname "Paper Man." Finally, Robinson testified that Hollins would have been lying had he answered, on his jury questionnaire, that he did not have a problem with drugs.

The judge then appointed counsel for Hollins and expressed concern that any questioning might lead to charges against him. The prosecution agreed to provide Hollins with immunity both for any prior drug transactions between him and Robinson and for any prior false answers on the jury questionnaire in exchange for testimony regarding the alleged grounds for bias.[7] If Hollins lied during questioning, however, he would not be covered by the immunity offer. The court sent his appointed counsel to discuss the immunity agreement with Hollins.

Hollins was then brought into the courtroom for examination outside the presence of the other jurors. The judge told Hollins "that the purpose of this hearing is to get to the truth and nothing else. Nobody is interested in prosecuting you or anybody else for anything." The judge told Hollins that the state had granted him immunity for "anything that happened until this minute right now." The judge went on to mention perjury and its punishments, apparently referring to the consequences of lying at the hearing. Immediately after this statement, the judge again mentioned immunity, stating, "We don't

---

[6] The state gave Robinson immunity from prosecution for past drug transactions with Hollins in exchange for this testimony.

[7] No copy of the jury questionnaire was included in the record, but the relevant questions were either read or paraphrased during the hearing. According to the transcript, the three questions at issue were, in essence: 1) Have you, your spouse, other family members, or close friends ever had a problem with drugs? 2) Do you know the defendant? 3) Do you know any members of the defendant's family?

care, as far as filing any charges at all up to this point you understand?" The judge generally described Robinson's allegations and concluded:

> [Y]ou don't need to worry about what you answer to implicate you in any criminal activity because the state has made a statement that they will not be interested in seeking any prosecution against you, they only want to know what the truth is.

The prosecutor asked Hollins whether he knew any of the trial participants. He testified that he recognized Isaac Robinson when he was called to testify. He did not know Robinson by name, but he recognized him from the neighborhood. Hollins denied that he had bought drugs directly from Robinson, but he had purchased drugs in Robinson's presence. Hollins testified that he did not have a problem with drugs and that his answer on the jury questionnaire was truthful. There was no further examination regarding Hollins's drug use.

Hollins also stated that he knew "Paper Man" but that he did not know Paper Man's real name or his relationship to Hatten. The two had been acquainted for 18 or 19 years, but although they hung out in front of the same store and "did things together," they were not friends. Hollins testified that he had seen Paper Man two or three times since the shooting, but he had not discussed the incident with anyone, including Paper Man. Finally, Hollins affirmed that he could be impartial, and if Hatten were sentenced to die, he "could face Paper Man without any problem."

Although two alternate jurors were available, the court kept Hollins on the jury, stating, without further explanation, that, "[W]e got problems if I get this guy off. He stays." Hatten's trial counsel did not question Hollins, object to Hollins's serving on the jury, or request a mistrial.

With his federal habeas petition, Hatten submitted an affidavit from Hollins stating that Hollins did not answer truthfully during this voir dire examination and went along with the prosecution's case because he was afraid of being criminally charged for his drug transactions. Hollins now admitted that

he did, in fact, have a drug problem at the time of the trial and that his drug use affected his judgment. On June 6, 2007, the district court held an evidentiary hearing to develop this claim. Hollins did not appear, despite being under subpoena, and Hatten did not call any other witnesses or present any affidavits or testimony from his trial attorneys.

Based on Hollins's affidavit and Robinson's testimony, Hatten asserts that Hollins was actually biased because he lied about his drug problem on his jury questionnaire and during questioning. This claim is unavailing. The question asked was, "Have you, your spouse, other family members, or close friends ever had a problem with drugs?" This subjective question about a "problem with drugs" is vague and ambiguous. Not only could a drug addict truthfully answer that he does not believe he has a "problem" with drugs, but a "problem" could refer to matters other than addiction, such as an allergy or an aversion. Subjective questions such as these provide a poor context for applying the *McDonough* framework. *See United States v. Collins*, 972 F.2d 1385, 1403-04 (5th Cir. 1992) (declining to apply *McDonough* to voir dire question whether any prospective juror had formed any opinion about the case). Even if the question is clear enough to apply the *McDonough* test, there is no basis to overturn the district court's finding that Hollins did not lie about his involvement with drugs. As the court states, the record affords no reason to find Robinson's testimony more credible than Hollins's, or to credit Hollins's current affidavit over his prior testimony. The predicate for a *McDonough* claim is lacking.

Hatten next contends that Hollins was biased because of his relationships with Robinson and Hatten's step father, Paper Man. Thus, Hollins allegedly lied on his jury questionnaire concealing his relationship to those men, and he later committed perjury when questioned about his dealings with them. These assertions are meritless.

Hollins's answers at the time he filled out his jury questionnaire were honest yet inaccurate, "something *McDonough* . . . expressly permits." *United States v. Ortiz*, 942 F.2d 903, 909 (5th Cir. 1991). As Hollins explained during questioning, he did not even know Isaac Robinson's name or his relationship to the trial before Robinson testified; he could hardly have noted such acquaintance on the jury questionnaire. Hollins also testified that he did not know that Paper Man was related to Hatten until the voir dire hearing. Hatten produced no evidence refuting Hollins's testimony.

Hatten also asserts, without evidentiary support, that Hollins lied during questioning about his relationship with Robinson. But even if Hollins answered untruthfully, this claim fails the second prong of *McDonough* because the allegedly correct answers would not have supported challenging Hollins for cause. The only relevant state law objection would be Hollins's bias or prejudice against Hatten. *See* TEX. CODE CRIM. PRO. art. 35.16(a)(9). But Texas "law requires more than the existence of a casual acquaintance with the victim of a crime or the victim's family to make a prospective juror subject to challenge for cause." *Little v. State*, 758 S.W.2d 551, 559 (Tex. Crim. App. 1988) (applying TEX. CODE CRIM. PRO. art. 35.16(a)(9)). The result is no different under the federal due process standard. *See Montoya v. Scott*, 65 F.3d 405, 419 n.29 (5th Cir. 1995) (applying both the state and federal standards to a *McDonough* claim). Hollins's occasional drug deals with or around Robinson are not enough to prove actual bias.

Nor was Hollins's relationship with Robinson, the intended victim and the actual victim's father, inherently significant enough to presume bias. Justice O'Connor's concurrence in *Smith* stated that a jury cannot be impartial if it includes, for instances, "a *close relative* of one of the participants in the trial or in the criminal transaction, or that the juror was a witness or somehow involved in the criminal transaction." *Smith v. Phillips*, 455 U.S. 209, 222, 102

S. Ct. 940, 948 (1982) (O'Connor, J., concurring) (emphasis added). Hollins's mere acquaintance or association with the intended victim is different in both kind and degree from either of these examples and falls comfortably within this court's decisions rejecting implied bias claims. *See Anderson v. Collins*, 21 F.3d 612, 620-21 (5th Cir. 1994) (no implied bias where juror's daughter had been married to the victim's grandson, who was deceased); *Jones v. Butler*, 864 F.2d 348, 361-62 (5th Cir. 1988) (no implied bias where a juror "had lived near the victim[,] knew her by sight, [and] had visited the funeral home to view her body").

Hatten additionally claims that Hollins was impliedly biased because he was threatened with prosecution during the trial. Hatten analogizes this case to *Brooks v. Dretke*, 418 F.3d 430 (5th Cir. 2005), in which this court found implied bias of a juror who was arrested on the first day of the punishment phase of a capital murder trial for bringing a gun into the courthouse. A criminal charge overhung the juror while he sat on the capital case jury. *Brooks* is distinguishable from this case, however, most obviously because Hollins was not threatened with prosecution unless he lied under oath at the voir dire hearing about his qualification for service. Moreover, when denying rehearing, the court cautioned that *Brooks* did not compel "a finding of implied bias any time the district attorney has the power to prosecute a sitting juror[.]" *Brooks v. Dretke*, 444 F.3d 328, 332 (5th Cir. 2006) (op. denying reh.). Here, Hollins was given immunity from prosecution related to any perjury on the juror questionnaire and any prior drug transactions with Robinson. Hollins risked no prosecution by truthfully answering questions during the voir dire hearing; consequently, the district attorney did not wield the power over Hollins that the *Brooks* court described.

Despite the grant of immunity, and his representation by counsel for the questioning by the trial court, Hollins submitted an affidavit in federal court

10

claiming that because he feared prosecution for his prior drug offenses, he was unfairly inclined toward the state's case. Regardless what Hollins subjectively feared, he was given immunity. The judge told Hollins, "Nobody is interested in prosecuting you or anybody else for anything." He continued, "anything that happened until this minute right now that you have immunity, that they will not seek prosecution against you, in other words." The rest of the colloquy has been described above.

## B. Prejudicial Restraints

Hatten contends his due process rights were violated because he appeared in shackles during closing arguments in the trial's guilt phase. Shackling a defendant is prohibited unless "justified by an essential state interest such as the interest of courtroom security." *Deck v. Missouri*, 544 U.S. 622, 624, 125 S. Ct. 2007, 2009 (2005) (quoting *Holbrook v. Flynn*, 475 U.S. 560, 568-69, 106 S. Ct. 1340 (1986)) (internal quotation marks omitted). If a court erroneously shackles a defendant, the jury receives a powerful image contradicting the presumption of innocence. As a result, "The [s]tate must prove beyond a reasonable doubt that the shackling error complained of did not contribute to the verdict obtained." *Id.* at 635, 125 S. Ct. at 2015-16 (quoting *Chapman v. California*, 386 U.S. 18, 24, 87 S. Ct. 824, 828 (1967)) (internal quotation marks and brackets omitted). However, on collateral review of a state court conviction, federal courts apply a more lenient standard, only granting a writ when an error had a "substantial and injurious effect or influence in determining the jury's verdict." *Fry v. Pliler*, 551 U.S. 112, 121-22, 127 S.Ct. 2321, 2328 (2007) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 113 S. Ct. 1710 (1993)).

The evidentiary portion of the trial's guilt phase concluded on Friday, February 2, 1996. The following Monday, Hatten was absent from the jury charge conference. Earlier that morning, Hatten had "kind of a brawl," as

described by his counsel, with the jail personnel who were bringing him to court. Although Hatten was in the courthouse, he would not communicate with his attorneys, and he did not attend the jury charge conference.

Hatten's counsel suggested that closing arguments could proceed without him, but the judge stated Hatten would only be excused if he voluntarily excluded himself. The judge then instructed Hatten's counsel to retrieve him and, if necessary, use a special chair in which the sheriff transports uncooperative prisoners. A recess occurred, after which Hatten was present in the courtroom for closing arguments. Hatten was shackled during closing arguments, but the nature and visibility of the restraints is unclear. At a minimum, his feet were shackled,[8] and the state submitted affidavits from jurors, one of whom stated that Hatten had his hands chained to his chair a couple of times during the trial.

The district court passed over the possibility that Hatten's obstreperous conduct required physical restraint and concluded instead that, even if the shackling were erroneous, the state has shown beyond a reasonable doubt that any error was not prejudicial. We agree. Hatten argues that the district court's ruling reflects inadequate consideration of his involuntary intoxication defense, yet he never offered an involuntary intoxication defense to the murder charge. He argued that he was merely reckless when he fired the shots, and consequently, did not possess the required mental state for murder. The overwhelming evidence against Hatten included his admission on the stand that he fired the gun intending to kill Isaac Robinson and a positive identification by Tabitha Thompson. The jury needed very little else to find him guilty of murder.

---

[8] On February 6, the following day, the court held a competency hearing at which a criminal investigator for the district attorney's office, who was present on February 5, testified that he saw Hatten attempt to remove his leg iron.

Accordingly, any error did not have a substantial and injurious effect on the jury's verdict.

## C. Unexhausted Claims

Hatten's federal habeas petition presents numerous claims that were never raised during state direct appeal or post-conviction proceedings.[9] Although these claims are unquestionably unexhausted, Hatten appeals the district court's ruling to that effect.[10] "This court reviews *de novo* the legal question whether a federal habeas petitioner has exhausted his claims." *Taylor v. Cain*, 545 F.3d 327, 333 (5th Cir. 2008). Hatten first argues that the state waived its exhaustion defense. This is contradicted by the record. Both the state's answer to Hatten's federal habeas petition and its summary judgment motion advanced the argument, in various places and in various contexts, that these claims were unexhausted.

In the alternative, Hatten argues that he is excused from exhausting newly presented claims because his attorney was constitutionally ineffective on direct appeal of his second sentence. Exhaustion requires that a petitioner first present the substance of his federal claims to the highest state court either through direct appeal or by state collateral review procedures. *Morris v. Dretke*, 413 F.3d 484, 491 (5th Cir. 2005). Ineffective assistance of counsel on direct appeal may provide cause to avoid a procedural bar, but "the exhaustion doctrine

---

[9] One of these claims, that Hatten was forcibly medicated during the guilt phase of his trial, was not raised in his 1997 state petition. Seven claims arise from his second punishment phase. He challenges: 1) ineffective assistance of counsel, 2) the jury charge regarding mitigating evidence, 3) an incompetent psychological examination, 4) improper shackling, 5) forcible medication with an antipsychotic drug, 6) defense counsel's failure to hire a competent psychiatrist, and 7) defense counsel's failure to object to improper prosecutorial argument. Hatten also claimed that he is incompetent to be executed, a claim that is premature for adjudication.

[10] Hatten also moves for a Certificate of Appealability on these issues. The district court granted a COA on all issues adjudicated by its opinion. Accordingly, this request is moot.

. . . generally requires that a claim for ineffective assistance of counsel be presented to the state courts as an independent claim before it can be used to establish cause for procedural default." *Murray v. Carrier*, 477 U.S. 478, 488-89, 106 S. Ct. 2639, 2646 (1986). In other words, the claim of ineffective assistance of counsel on direct appeal is an independent constitutional violation, which must itself be exhausted using state collateral review procedures. *Edwards v. Carpenter*, 529 U.S. 446, 451-53, 120 S. Ct. 1587, 1591-92 (2000). Here, because Hatten did not exhaust his ineffective appellate counsel argument, it is procedurally barred from review in this court and cannot furnish the basis for cause and prejudice enabling federal review of the underlying unexhausted habeas claims.

We must also reject Hatten's attempts to circumvent this bar by contending that because his appellate counsel was also trial counsel, the counsel suffered from a conflict of interest that dissuaded him from presenting Hatten's claims on direct appeal. First, any such conflict fails to explain counsel's not raising all other claims except for ineffective trial counsel. More to the point, his ineffective counsel claims should have been raised in state habeas proceedings. *See Ex Parte Okere*, 56 S.W. 3d 846, 856 (Tex. Crim. App. 2001). But ineffectiveness of state habeas counsel furnishes no basis for cause to excuse a procedural default. *In re Goff*, 250 F.3d 273, 276 (5th Cir. 2001). Repackaging his defaulted claims as ineffective counsel claims does not work in this case. Since he cannot show cause for the defaults, we do not reach the issues of prejudice.

## D. Cumulative Error

Hatten also raises a claim of cumulative error. Because he does so for the first time on appeal, the claim will not be considered. *Johnson v. Puckett*, 176 F.3d 809, 814 (5th Cir. 1999) (declining to address habeas petitioner's claim raised for the first time on appeal).

14

## IV.

For the foregoing reasons, the district court's judgment denying relief is AFFIRMED.