# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

June 17, 2021

Lyle W. Cayce
Clerk

No. 19-10173

THOMAS GEORGE CRAAYBEEK,

*Petitioner—Appellant*,

*versus*

BOBBY LUMPKIN, *Director, Texas Department of Criminal Justice, Correctional Institutions Division*,

*Respondent—Appellee*.

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 7:17-CV-107

Before OWEN, *Chief Judge*, and CLEMENT and HIGGINSON, *Circuit Judges*.

STEPHEN A. HIGGINSON, *Circuit Judge*:*

Thomas George Craaybeek shot at officers who came to his home in response to a 9-1-1 call. A jury convicted him of aggravated assault by threat on a public servant and assessed his punishment at life imprisonment. The

---

* Pursuant to 5TH CIRCUIT RULE 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIRCUIT RULE 47.5.4.

No. 19-10173

jury foreman had worked in law enforcement, was still a reserve officer, and was acquainted with almost every State witness. In this federal habeas appeal, Craaybeek argues that he was denied an impartial jury because the jury foreman was impliedly biased against him. For the reasons articulated herein, we AFFIRM the denial of Craaybeek's habeas petition.

I.

A.

In 2014, law enforcement received a 9-1-1 call that Thomas George Craaybeek had shot his wife in their home. State Trooper James Lattimore responded to a dispatch issued by the Young County Sheriff's Department, and when he arrived at Craaybeek's home, an Olney police officer was also at the scene. As the two waited for additional officers to arrive, multiple gunshots were fired from Craaybeek's home, and the gunfire continued after Young County Sheriff's deputies arrived. Craaybeek ultimately surrendered. *See Craaybeek v. State*, No. 02-15-00454-CR, 2016 WL 4491225, at *1 (Tex. App. Aug. 26, 2016).

A grand jury charged Craaybeek with aggravated assault against a public servant in violation of Texas Penal Code § 22.02(b)(2)(B). Craaybeek pleaded not guilty and proceeded to trial. The jury found him guilty. The jury also determined Craaybeek's punishment. With the discretion to choose a term of imprisonment ranging from five years to life, the jury chose life.

This appeal centers on Craaybeek's claim that he was denied an impartial jury because Charlie Parker Jr., the jury foreman, was impliedly biased against him. Craaybeek points to three reasons that Parker was biased. First, Parker had a 26-year career in law enforcement with the Graham Police Department and the Young County Sheriff's Department that employed two of the State witnesses/victims. Second, at the time of trial, Parker was a reserve officer with the Olney Police Department, which employed four of

No. 19-10173

the State witnesses/victims.   Finally, because of his background in law enforcement, Parker was personally familiar with eight of the nine State witnesses/victims.[1]

Parker disclosed his acquaintance with State witnesses during voir dire.  When the prosecutor listed 12 "potential witnesses or people involved in this case," Parker disclosed, "I know all of them."  When defense trial counsel asked Parker whether he knew Trooper Lattimore, the State's lead witness, Parker stated that he had "met him a couple of times" but did not know him "real well" and had not meaningfully interacted with him "in the last nine years."

Parker also disclosed his prior law enforcement career in an exchange with trial defense counsel: "I've got 26 years full-time law enforcement. Retired from Graham Police Department. I was a patrol officer and lead investigator with the police department. Spent a year and a half or so with the Young County Sheriff's Office."  He also stated that he was still a reserve officer with the Olney Police Department but had not been called "in the past five years."

Trial defense counsel did not challenge Parker for cause or exercise a peremptory strike against him.  Trial defense counsel did, however, challenge other potential jurors for cause.

### B.

Craaybeek's conviction and life sentence were affirmed on appeal, and the Texas Court of Criminal Appeals ("TCCA") refused Craaybeek's

---

[1] Parker also was acquainted with the trial judge, but Craaybeek does not discuss this in his appellate briefing.

petition for discretionary review.  On direct appeal, Craaybeek did not raise the issue of implied juror bias.

In the habeas application he submitted to the TCCA, Craaybeek raised for the first time the claim that the jury foreman, Charlie Parker Jr., was biased because of his law enforcement background and his familiarity with most witnesses.  The TCCA denied his application on the merits without a written order.  Craaybeek then filed a habeas petition in federal district court raising three claims, one of which was, again, the implied juror bias claim.  A magistrate judge concluded that all three of Craaybeek's claims were meritless.  In addition, the magistrate judge also concluded sua sponte that the claim of juror bias was procedurally barred because the defense had not challenged Parker for cause or exercised a peremptory strike against him, thereby waiving the issue under state law.  The district court adopted the magistrate judge's findings over Craaybeek's written objections.  The district court denied a COA.

Craaybeek timely appealed and moved this court for a COA.  We granted a COA as to two issues: "(1) whether Craaybeek waived his claim of implied jury bias by failing to object to the seating of the jury foreman, and (2) if not, whether Craaybeek was denied an impartial jury because the jury foreman was presumptively biased against him."

## II.

In a habeas appeal, we review the district court's findings of fact for clear error and its conclusions of law de novo, applying the same standard of review to the state court's decision as the district court.  *Buckner v. Davis*, 945 F.3d 906, 909 (5th Cir. 2019), *cert. denied*, 140 S. Ct. 2832 (2020).

In addition, the state court's decision is subject to the deferential standards of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  As relevant to this appeal, we may grant habeas relief on a

No. 19-10173

claim that a state court adjudicated on the merits if, inter alia, the adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

## III.

The first claim on which we issued a COA is whether Craaybeek waived his claim of implied jury bias by failing to object to the seating of the jury foreman. But we need not answer this question. Because the TCCA denied Craaybeek's habeas application on the merits, the district court erred when it concluded that federal review of Craaybeek's implied bias claim was procedurally barred.

It is well settled that the independent and adequate state ground doctrine "applies to bar federal habeas when a state court declined to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement." *Coleman v. Thompson*, 501 U.S. 722, 729–30 (1991), *modified in part on other grounds by Martinez v. Ryan*, 566 U.S. 1 (2012). For a claim to be procedurally barred, "the last state court to consider the claim [must have] expressly and unambiguously based its denial of relief on a state procedural default." *Fisher v. Texas*, 169 F.3d 295, 300 (5th Cir. 1999). This court has consistently held that "the Texas contemporaneous objection rule, as applied by the TCCA to [a] petition for writ of habeas corpus, is an independent and adequate state-law procedural ground sufficient to bar federal court habeas review of federal claims." *Amos v. Scott*, 61 F.3d 333, 345 (5th Cir. 1995); *see also Fisher*, 169 F.3d at 300.

Here, however, the TCCA denied Craaybeek's habeas application on the merits: it wrote that the application was "denied without written order"—it did not invoke any procedural rule. This constitutes an adjudication on the merits because "[u]nder Texas law a denial of relief by

No. 19-10173

the Court of Criminal Appeals serves as a denial of relief on the merits of the claim." *Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir. 2000). As the TCCA has written: "In our writ jurisprudence, a 'denial' signifies that we addressed and rejected the merits of a particular claim while a 'dismissal' means that we declined to consider the claim for reasons unrelated to the claim's merits." *Ex parte Torres*, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997).

The State has not argued, and the district court did not find, that Craaybeek's claim was waived as a matter of federal law. Rather, the district court sua sponte determined that Craaybeek's claim was procedurally barred by his failure to comply with a state rule. This was error because the TCCA denied Craaybeek's claim on the merits and did not expressly and unambiguously rely on state procedural default. Rather than allow this error to decide the appeal because of Craaybeek's failure to address it in his pro se briefing, however, we instead address the substance of Craaybeek's claim, as the State invites us to do. *See Busby v. Dretke*, 359 F.3d 708, 720 (5th Cir. 2004) (stating this court need not always address whether a claim is defaulted before reaching its merits).

## IV.

The second claim on which we issued a COA is whether Craaybeek was denied an impartial jury because the jury foreman was impliedly biased against him.

"The Sixth Amendment guarantees an impartial jury, and the presence of a biased juror may require a new trial as a remedy." *Hatten v. Quarterman*, 570 F.3d 595, 600 (5th Cir. 2009). "A juror is biased if his 'views would prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath.'" *Id.* (quoting *Soria v. Johnson*, 207 F.3d 232, 242 (5th Cir. 2000)).

No. 19-10173

"Actual bias exists when the juror failed to answer a material question honestly on voir dire, and a correct response would have provided a valid basis for a challenge for cause." *Id.* (citing *McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 556 (1984)). "A claim of alleged bias is ordinarily addressed in a hearing where the judge examines the juror and obtains assurances of the juror's impartiality." *Id.* (citing *Brooks v. Dretke*, 444 F.3d 328, 330 (5th Cir. 2006)).

By contrast, implied bias—at issue in this case—exists when "no reasonable person could not be affected in his actions as a juror." *Brooks*, 444 F.3d at 331. In these extreme situations, "the Constitution refuses to accept any assurances to the contrary." *Id.* In other words, "[w]here a juror has a close connection to the circumstances at hand . . . bias may be presumed as a matter of law." *Buckner*, 945 F.3d at 910 (citing *Brooks*, 444 F.3d at 330).

*Smith v. Phillips* is the leading Supreme Court case considering a claim of implied juror bias. 455 U.S. 209 (1982); *see also Remmer v. United States*, 350 U.S. 377 (1956); *Remmer v. United States*, 347 U.S. 227 (1954). The Court in *Smith* declined to presume bias as a matter of law when a juror in a murder trial applied for a job in the district attorney's office, a fact not disclosed until after the conviction. *Smith*, 455 U.S. at 213, 221. In a concurring opinion, Justice O'Connor clarified that despite the Court's holding, there are "some extreme situations that would justify a finding of implied bias" and outlined three such examples:

> . . . a revelation that the juror is an actual employee of the prosecuting agency, that the juror is a close relative of one of the participants in the trial or the criminal transaction, or that the juror was a witness or somehow involved in the criminal transaction.

*Id.* at 222 (O'Connor, J., concurring). When considering claims of implied juror bias, this court routinely looks to the examples in Justice O'Connor's

7

concurrence.  *E.g., Buckner*, 945 F.3d at 912–14; *Uranga v. Davis*, 893 F.3d 282, 288–89 (5th Cir. 2018); *Morales v. Thaler*, 714 F.3d 295, 299 (5th Cir. 2013); *Brooks*, 444 F.3d at 330–31; *Solis v. Cockrell*, 342 F.3d 392, 396 (5th Cir. 2003); *Andrews v. Collins*, 21 F.3d 612, 620 (5th Cir. 1994); *United States v. Scott*, 854 F.2d 697, 699 (5th Cir. 1988).

Here, the state court denied Craaybeek's state habeas application on the merits without a written order.  Therefore, under AEDPA, we must defer to the state court's decision unless it "was contrary to . . . clearly established Federal law, as determined by the Supreme Court."   28 U.S.C. § 2254(d)(1).[2]

The State argues, for § 2254 purposes, that there is no "clearly established" Supreme Court precedent recognizing implied juror bias.  But like recent panels of this court, we decline to "revisit[] whether this Court recognizes the implied-bias doctrine as clearly established law," *Buckner*, 945 F.3d at 915, because the facts presented, though concerning, are not extreme ones "sufficient to trigger application of the implied bias doctrine," *Uranga*, 893 F.3d at 288.

While Parker did have a background in law enforcement, was still a reserve officer, and was acquainted with eight of the nine State witnesses, these facts fall "outside the extreme genre of cases Justice O'Connor pointed to in her concurring opinion in *Smith v. Phillips*." *Id.*  Parker was not "an actual employee of the prosecuting agency," "a close relative of one of the participants in the trial or the criminal transaction," or "a witness or somehow involved in the criminal transaction."  *Smith*, 455 U.S. at 222.

---

[2] "Because a federal habeas court only reviews the reasonableness of the state court's ultimate decision, the AEDPA inquiry is not altered when, as in this case, state habeas relief is denied without an opinion." *Schaetzle v. Cockrell*, 343 F.3d 440, 443 (5th Cir. 2003).

No. 19-10173

Furthermore, his circumstance cannot be described as the functional equivalent of one of these "extreme situations," such as being a close relative to an employee of the prosecuting agency. *Scott*, 854 F.2d at 699. Although he was acquainted with almost every State witness, the record does not support the conclusion that Parker had a "close relationship" with any of them. *Solis*, 342 F.3d at 398–99. In fact, the record suggests the opposite: regarding Trooper Lattimore, the State's primary witness, Parker averred that although he had "met him a couple of times" he did not know him "real well" and had not meaningfully interacted with him "in the last nine years." Regarding the other State witnesses, the record shows only that Parker "work[ed]" with them. The record also contains no evidence that Parker was "otherwise emotionally involved" in the case. *Id.* at 399. For example, he was not a victim of a similar crime, *Buckner*, 945 F.3d at 914; a victim of Craaybeek's crime, *Uranga*, 893 F.3d at 289–90 (Haynes, J., dissenting); or facing prosecution by the trial prosecutor, *Brooks*, 444 F.3d at 332.

Finally, Parker's candid and full disclosure of his prior employment, current employment, and familiarity with State witnesses coupled with trial counsel's inquiry into these circumstances and decision to not strike or challenge Parker for cause undermine a determination of implied bias. *See Smith*, 455 U.S. at 222 (describing events that would support a finding of implied bias as "revelation[s]"). Counsel elicited, for example, that Parker "ha[d] a problem with officers that overstep the laws . . . ." Parker even stated that he had left police work to join a state office that was "gas" to law enforcement's "fire": "you don't get them anywhere close to each other."

Without caselaw assessing a multiplicity of factors in the implied juror bias context, and under AEDPA's deferential standard, we are unable to conclude that Craaybeek's claim warrants habeas relief. Significantly, we emphasize that Parker disclosed the affiliations and acquaintances at issue during voir dire, and trial counsel examined him as to his ability to remain

impartial.   While a juror's assurance that he can be fair and impartial is irrelevant in a true implied bias context, *Brooks*, 444 F.3d at 331, trial counsel's full exploration of Parker's connections was akin to the posttrial hearing remedy outlined in *Smith*, 455 U.S. at 221.

## V.

Although it is an open question whether a claim of implied juror bias is clearly established federal law, the facts Craaybeek alleges do not fall within the "extreme situations" in which courts have presumed bias as a matter of law.   We therefore AFFIRM the district court's denial of Craaybeek's habeas petition.